UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MEGAN TYRRELL,

               Plaintiff,

        -against-

SEAFORD UNION FREE SCHOOL DISTRICT,
SEAFORD HIGH SCHOOL, MICHAEL J.
RAGON, in his individual and official capacity,
PAULA SUSSMAN, in her individual and
official capacity, GEORGE DUFFY III,
in his individual and official capacity, BRIAN
CONBOY, in his individual and official capacity,
MASSAPEQUA SCHOOL DISTRICT,

               Defendants.

------------------------------------------------------------------X

Docket No.: CV-08-4811
(SJF)(MLO)


## PLAINTIFF'S MEMORANDUM IN LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT


THE LAW OFFICES OF
FREDERICK K. BREWINGTON
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959


OF COUNSEL:
MILI MAKHIJANI

# TABLE OF CONTENTS

**PAGE NO.**

TABLE OF CASES ............................................................. ii

PRELIMINARY STATEMENT ................................................ 1

STATEMENT OF RELEVANT FACTS ......................................... 1

STANDARD OF REVIEW ..................................................... 4

    I.     ANY MISTAKE, OMISSION, IRREGULARITY OR DEFECT IN THE NOTICE OF CLAIM SHOULD BE DISREGARDED BY THE COURT IN ITS SOUND DISCRETION PURSUANT TO GENERAL MUNICIPAL LAW §50-e(6) AS THE DEFENDANTS WERE NOT PREJUDICED BY THE DEFECT ............ 5

    II.    THE INDIVIDUALLY NAMED DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF WHICH A REASONABLE SCHOOL OFFICIAL WOULD HAVE KNOWN ......................... 9

    III.    PLAINTIFF ADEQUATELY PLEADED A CLAIM FOR PUNITIVE DAMAGES AGAINST THE INDIVIDUALLY NAMED DEFENDANTS .............. 12

    IV.    PLAINTIFF STATED A VALID CLAIM PURSUANT TO 42 USC §1983 AS THE DEFENDANTS' FAILURE TO PROPERLY INVESTIGATE AND REMEDY THE CHALLENGED HARASSMENT DENIED PLAINTIFF A RIGHT AND/OR PRIVILEGE SECURED BY THE CONSTITUTION ..................... 13

    V.    THE NEGLIGENCE AND THE NEGLIGENT INFLICTION OF EMOTION DISTRESS CAUSES OF ACTION MUST BE SUSTAINED AS THESE CLAIMS ARE ADEQUATELY ALLEGED IN PLAINTIFF'S COMPLAINT AND IT IS PREMATURE TO DISMISS THESE CLAIMS AT THIS EARLY STAGE OF THE LITIGATION ................................................. 17

    VI.    PLAINTIFF'S COMPLAINT DOES SET FORTH A CAUSE OF ACTION UNDER TITLE IX, 20 U.S.C. § 1681 ................................... 18

CONCLUSION .............................................................. 25

**TABLE OF CASES**

**FEDERAL CASES**

<u>CASE NAME</u>                                                          <u>PAGE NO.</u>

Atlantic Mutual Ins. Co. v. Balfor MacLaine Int'l, Ltd.,
968 F.2d 196 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Bruneau ex rel. Schofield v. South Kortright Cent.,
163 F.3d 749 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cannon v. Univ. of Chicago,
441 U.S. 677(1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Clayton v. City of Poughkeepsie,
2007 WL 2154196 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conboy v. AT&T Corp.,
241 F.3d 242 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Davis v. Monroe County Bd. Of Edu.,
526 U.S. 629 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,18

Dillard v. City of New York,
67 A.D.2d 878 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Doe v. East Haven Bd. of Educ.,
WL 2006 ( 2d Cir. Conn) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Doe v. Derby Board of Educ.,
451 F.Supp.2d 447 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Dwares v. City of New York,
985 F.2d 94 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Farmer v. Brennan,
511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ferran v. Town of Nassau,
11 F.3d 21 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gant v. Wallingford Board of Ed.,
195 F.3d 134 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gebser v. Lago Vista Indep. Sch. Dist.,
524 U.S. 274 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hardy v. New York City Health & Hosp. Corp.,
164 F.3d 789 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Harlow v. Fitzgerald,
457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hayut v. State Univ. of N.Y.,
352 F.3d 733 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Johnson v. Newburgh Enlarged School District,
239 F.3d 246 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jundi v. Estate of Rockafeller,
885 F.2d 1060 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

K.M., et al. v. Hyde Park Central School District, et al.,
381 F.Supp.2d 343 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Malcom v. City of New York,
770 N.Y.S.2d 79 (2nd Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mayer v. City of New York,
80 A.D.2d 799 (1st Dep't 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Murrell v. School District No. 1, Denver Colorado, et al.,
186 F.3d 1238 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pearson v. Callahan,
129 S.Ct. 808 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Riccio v. New Haven Bd. of Edu.,
467 F.Supp.2d 219 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Roniger v. McCall,
22 F.Supp. 2d 156 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Saucier v. Katz,
533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Teresta v. City of New York,
304 N.Y. 440 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Vance v. Spencer County Public Sch. Dist.,
231 F.3d 253 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wilson v. Layne,
526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### STATUTES

FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
42 USC §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
Title IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
General Municipal Law §50-e(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
N .Y. Gen. Mun. §§ 50-i(1)(a); 50-e(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
N.Y. Gen. Mun. § 50-e(6)59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*
Fed. Reg. 11,448, at 11,448 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *PASSIM*

## PRELIMINARY STATEMENT

Plaintiff Megan Tyrrell, by and through her attorneys, The Law Offices of Frederick K. Brewington, submits the instant memorandum of law in opposition to Defendants' motion to dismiss the Amended Complaint pursuant to FRCP 12(b)(6). On April 27, 2009, Plaintiff filed an Amended Complaint, seeking monetary and injunctive relief asserting federal and state law claims for denial of due process and violations of the Plaintiff's constitutional and civil rights under the United States Constitution, 42 USC §1983, Title IX, and state law claims including negligence, negligent supervision/failure to supervise and negligent infliction of emotional distress. Defendants Seaford Union Free School District (hereinafter "Seaford"), Michael J. Ragon (hereinafter "Ragon"), Paula Sussman (hereinafter "Sussman"), George Duffy III (hereinafter "Duffy") and Brian Conboy (hereinafter "Conboy") or collectively hereinafter "Defendants", by and through their attorneys, filed a pre-answer motion to dismiss Plaintiff's Amended Complaint.

Defendants' motion to dismiss should be dismissed in its entirety as (I) any mistake, omission, irregularity or defect in Plaintiff's notice of claim should, in the Court's sound discretion, be disregarded; (ii) the individually named Defendants are not entitled to qualified immunity; (iii) Plaintiff's Amended Complaint alleges a legally cognizable claim for punitive damages against the individual Defendants; (iv) Plaintiff pleaded a valid federal claim pursuant to 42 USC §1983 sufficient to withstand a motion to dismiss; (v) the negligence and negligent infliction of emotional distress causes of action should stand; and (vi) Plaintiff's claim pursuant to Title IX must withstand Defendants' motion to dismiss.

## STATEMENT OF RELEVANT FACTS

The facts recited herein are contained within Plaintiff's Amended Complaint. In or about April, 2005, Plaintiff, fifteen-years-old at that time, attended SEAFORD. Amend Comp. ¶14. On

April 1, 2005, at approximately 8:00PM at Pathmark in Seaford, students from SEAFORD and Massapequa High School sexually assaulted and molested Plaintiff. Amend Comp. ¶17. Pictures were taken of the molestation and assault which were later posted on the Internet for Plaintiff's peers and other members of the community to view. Id. at ¶19. Upon information and belief, Plaintiff was drugged on April 1, 2005, and as a result had no recollection of the tragic events that took place. Id. at ¶21. Soon after the incident, two employees from St. Anthony's High School contacted Defendant SUSSMAN at SEAFORD. Id. at ¶24. Upon learning of the egregious incident, Defendant SUSSMAN failed to report the incident to any school officials or legal authorities. Id. at ¶28. On April 15, 2005, Mrs. Tyrrell, Plaintiff's mother, went to SEAFORD and spoke directly with the Assistant Principal, Dr. Niedal and left a message for Defendant SUSSMAN to contact her. Id. at ¶31. On April 18, 2005, Plaintiff informed her mother that Defendant SUSSMAN was aware of the illicit photographs that were spread on the Internet. Id. at ¶33. On the same day, Plaintiff's mother went to Defendant SEAFORD to speak directly with Defendant SUSSMAN. Defendant SUSSMAN responded in a "rudely" stating that she was not under any obligation to cooperate due to student confidentiality. Id. at ¶34. Immediately thereafter, Plaintiff's mother contacted the sex crime unit who informed her that SEAFORD was mandated to report the unlawful and criminal behavior of its students to legal authorities. Id. at ¶35.

On April 19, 2005, Defendant RAGON, SEAFORD's principal, called Plaintiff's mother and informed her that he had consulted with the school attorney and proceeded to set up a meeting with Mrs. Tyrrell for later that same day. Id. at ¶36. During that meeting, Defendant RAGON admitted that he was aware of the illicit photographs on the Internet and of the incident as early as April 11, 2005. Id. at ¶37. Students were using the pictures as "wallpaper" on their computer screens during

computer class. Id. at ¶38. Defendants failed to follow their own "Acceptable Use Policy" of the Internet with respect to filtering visual depictions that are obscene, constitute child pornography or are otherwise harmful to minors. Amend Comp. at ¶¶39-40.

Thereafter, Defendant RAGON, told Plaintiff's mother that a St. Antony's student told a counselor that Plaintiff "blacked out" and that he believed Plaintiff was a victim of "date rape." Id. at ¶41. The St. Anthony's student was also later assaulted by a student from Defendant SEAFORD over the illicit photographs being used as "wallpaper". Id. at ¶42. At the end of the meeting, Defendant RAGON admitted that no report was made of the incident (even though he was fully aware of the incident). Id. at ¶43. Plaintiff's peers at Defendant SEAFORD were talking about her, ridiculing Plaintiff, labeling her a lesbian and writing derogatory comments about Plaintiff on the bathroom walls located on school grounds. Id. at ¶45. On April 20, 2005, Plaintiff's mother removed Plaintiff from Defendant SEAFORD. Id. at ¶44.

On April 22, 2005, Mrs. Tyrrell called Defendant DUFFY, the superintendent of schools, to request home schooling. Id. at ¶47. Defendant RAGON responded that there was no need for home tutoring because Plaintiff will be "just fine" as the school would watch over her. Id. at ¶48. On May 2, 2005, after Plaintiff has already missed three weeks of school, Mrs. Tyrrell's request for home schooling for her daughter was finally granted. Id. at ¶¶51 and 58. Since the incident, Plaintiff Tyrrell's grades dropped significantly. Additionally, Plaintiff's report card for the Spring 2005 semester contained two 'incomplete' marks. Id. at ¶57. The home instruction provided by Defendant SEAFORD was deficient and below satisfactory. The home instructors were ill-prepared and unable to provide a proper education. At no time did any of the Defendants provide any assistance to aid Plaintiff in getting through the traumatic experience. Id. at ¶59-60.

On May 3, 2005, Defendant CONBOY called Mrs. Tyrrell and stated that there would be a full investigation conducted regarding the incident. Id. at ¶52. Defendants failed to inform the Tyrrell family of whether an investigation was in fact conducted, and if one was, they failed to inform the Tyrrells of the results of any such investigation. Amend. Comp. ¶53. As such, there was no indication that Defendants disciplined any students for this egregious incident. As a direct result of this incident, the Tyrrell family suffered humiliation, ridicule and embarrassment which ultimately led to their relocation to another District. Id. at ¶¶61-67.

## STANDARD OF REVIEW

The Supreme Court has established that, in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); See also Conley v. Gibson, 355 U.S. 41, 45-6 (1957) (a motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). See also, Roniger v. McCall, 22 F.Supp. 2d 156, 160 (S.D.N.Y. 1998). Further, when reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236. The Second Circuit follows this law. See, e.g., Ferran v. Town of Nassau, 11 F.3d 21, 22 (2nd Cir. 1993); Atlantic Mutual Ins. Co. v. Balfor MacLaine Int'l, Ltd., 968 F.2d 196, 198 (2nd Cir. 1992) (Court "must accept as true all material factual allegations in the complaint"). "This cautionary standard applies with greater force where the Plaintiff alleges civil rights violations." Roniger v. McCall, 57 F3d. 202,206 (2nd Cir 1995) [Emphasis added]. Applying the above standards to Plaintiff's Complaint, the defendants have clearly failed to meet their legal burden under Fed. Rule Civ. Pro. 12(b)(6) – thus their motion to

-4-

dismiss must be denied.

**I.     ANY MISTAKE, OMISSION, IRREGULARITY OR DEFECT IN THE NOTICE OF CLAIM SHOULD BE DISREGARDED BY THE COURT IN ITS SOUND DISCRETION PURSUANT TO GENERAL MUNICIPAL LAW §50-e(6) AS THE DEFENDANTS WERE NOT PREJUDICED BY THE DEFECT**

Defendants argue that Plaintiff's state law claims against the District fail as a matter of law because Plaintiff failed to comply with the state's notice of claim requirements. As a general rule, "in a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789 (2d Cir.1999). Under New York law, a notice of claim is a "condition precedent" to bringing a tort claim against a municipality or any of its officers, agents, or employees. See N .Y. Gen. Mun. §§ 50-i(1)(a); 50-e(1)(a). The purpose of the notice of claim requirement is to afford the municipality "an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available." Teresta v. City of New York, 304 N.Y. 440, 443 (1952).

While deficiencies in notice of claims may generally be fatal to Plaintiff's state law claims, New York's notice of claim statute also permits the court to disregard such defects if they were made in good faith and did not prejudice the municipality. See N.Y. Gen. Mun. § 50-e(6). At the outset, it must be noted that the Notice of Claim filed by Plaintiff's parents at the time of the incident was timely. The Defendants' only point of contention is that the Notice of Claim was defective as it omitted some information regarding the incident. However, although certain facts were inadvertently omitted from the *pro se* Notice of Claim, Defendant SEAFORD failed to set forth any facts tending to establish that it was prejudiced by the alleged defect. Defendants' merely assert a blanket, unsupported allegation that "it could not conduct a prompt investigation of the claims and

is now prejudiced from doing given the time that has run since the alleged incident." <u>See Def. Memo of Law p. 4</u>. Plaintiff's Amended Complaint is inundated with facts to the contrary. Specifically, the facts alleged in Plaintiff's Amended Complaint clearly indicate that the school district officials of Defendant Seaford were fully aware of the incident, promised to conduct a full investigation, and upon information and belief, did conduct an investigation. <u>Amend. Comp. ¶37 and ¶52</u> (Defendants Conboy and Ragon were aware of the incident and stated that a full investigation would be conducted). As the matter currently pending before the Court is a motion to dismiss, all of the allegations in Plaintiff's Complaint must be accepted as true. Without discovery, Plaintiff cannot discern whether an investigation, and to what extent, if any, one was conducted.

The two cases discussed in Defendants' moving papers in support of their position, <u>Parise</u> and <u>Canelos</u>, were both decisions following motions for summary judgment. At summary judgment, after discovery has been completed, the court is better able to determine based on the record whether or not any defect in a notice of claim results in any actual prejudice to a municipality. Quite to the contrary, here, Plaintiff's Amended Complaint, viewed in the light most favorable to the Plaintiff, adequately establishes that Defendant Seaford was in no way hindered from conducting an investigation of the incident. In fact, the Complaint alleges that an investigation was promised and was believed to have been conducted.

Further, even more telling is the letter written by Defendant Seaford's insurance company to Mr. and Mrs. Tyrrell regarding the defect in Plaintiff's notice of claim. <u>See Def. Ex. "F"</u>. In that letter, dated July 20, 2005, the insurance company for Defendant Seaford stated its rejection of Plaintiff's notice of claim due to being "non-specific in nature". <u>Id.</u> However, the caption of the letter indicates that the matter regarded Plaintiff Tyrrell, that the insured was Defendant Seaford, and

that the **date of accident was 4/1/05**. Id. (emphasis added). Based on the allegations in Plaintiff's Amended Complaint, as well as Seaford's own representations, Defendant Seaford cannot now avoid liability by asserting that it could not have conducted an investigation, when by their own admission they had everything necessary to conduct such an investigation. If permitted to conduct discovery, the record will clearly show that no actual prejudice resulted from Plaintiff's Notice of Claim. In fact, based on the notification of rejection dated July 20, 2005, it is clear that Defendant Seaford received actual knowledge of the specifics of Plaintiff's claim within a reasonable time after its occurrence. Therefore, Defendant Seaford cannot now claim that it is prejudiced as no prejudice exists.

Moreover, Defendant Seaford intentionally and wilfully did not conduct a 50h hearing even though Defendant Seaford possessed actual knowledge of the facts and circumstances giving rise to the claim, as indicated by the letter of rejection (Def. Exh. "F"). In essence their proceeded at their own peril. The district *chose* not to conduct a hearing pursuant to General Municipal Law 50-h. Defendant had ample opportunity to conduct a hearing upon receipt of the Notice of Claim dated June 27, 2005 (See Def. Exh. "E"). Plaintiff's Notice of Claim contains a "RECEIVED" stamp which indicates that the "Superintendent's Office" of "Seaford Schools" received the document on or about June 28, 2005. The rejection did not come until some three (3) weeks later. This delay clearly was not reasonable. Plaintiff's Amended Complaint clearly indicates that the school's superintendent, Defendant Duffy, had knowledge of the incident and is presumed to have conducted an investigation prior to granting home instruction to the Plaintiff. Comp. ¶¶47, 48, 51 and 57. Therefore, had the municipality conducted a 50-h hearing, it would have had the opportunity to *further* investigate the incident. Instead, Defendants chose not to conduct the hearing although

Claimants were willing and available.

In addition to there being no prejudice to the municipality, Defendant Seaford made no showing that the Notice of Claim was filed in bad faith. Plaintiff was a minor at the time of the incident. Comp. ¶16. As such, Plaintiff's parents filed the Notice of Claim on her behalf without the benefit of legal counsel. Many courts have disregarded notice of claims that do not comply with the General Municipal Law so long as the defective notice of claim was not filed in bad faith and the defendant suffered no prejudice. See Mayer v. City of New York, 80 A.D.2d 799, 437 N.Y.S.2d 94 (1st Dept. 1981) (lack of specificity in notice of claim was inadvertent and was not in any way calculated to confuse or prevaricate and no actual prejudice shown); see also Dillard v. City of New York, 67 A.D.2d 878 (a "mistake, omission, irregularity or defect" in the notice of claim may be corrected in the court's discretion provided the other party is not prejudiced).

The spirit and purpose of the notice of claim requirement would not be hindered if this Court were to exercise its discretion in disregarding the defect in Plaintiff's notice of claim. At the outset, the purpose of the notice of claim is to provide the municipality actual knowledge of the incident. In the instant matter, the District had more than sufficient notice of the incident. A plain reading of the Plaintiff's Complaint establishes that the superintendent, assistant principal, principal and other employees were well aware of the incident immediately thereafter. Additionally, upon Mrs. Tyrrell's request for home instruction for her daughter, Defendants are assumed to have investigated the underlying incident prior to granting the Plaintiff home instruction.

Consequently, the Court should exercise its discretion pursuant to N.Y. Gen. Mun. §50-e(6) to disregard the defect. *See* Malcom v. City of New York, 770 N.Y.S.2d 79, 80 (2d Dep't 2003) (disregarding defect in notice of claim, which failed to allege location of arrest, because no actual

prejudice was demonstrated nor was there a showing of bad faith). Plaintiff's state law claims against the District are, therefore, properly before the Court.

## II. THE INDIVIDUALLY NAMED DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF WHICH A REASONABLE SCHOOL OFFICIAL WOULD HAVE KNOWN

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. *See* Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201, 121 S.Ct. 2151. "[T]he next, sequential step is to ask whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151. The United States Supreme Court recently receded from Saucier, however, in Pearson, holding that when "resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by plaintiff make out a violation of a constitutional right. Pearson v. Callahan, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Therefore, at the Court's own discretion, it can first determine

whether a constitutional right was clearly established at the time of defendant's alleged misconduct. In determining whether a constitutional right is "clearly established," as required for plaintiff to defeat a government official's claim of qualified immunity in civil rights actions, the relevant dispositive inquire is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250-251 (2d Cir. 2001).

The United States Supreme Court, and as such the Second Circuit, recognize a clearly established right pursuant to Title IX. Davis v. Monroe County Bd. of Education, 526 U.S. 629, 119 S.Ct. 1661 (1999). Specifically, in Davis, the Supreme Court held that in some circumstances, a school district may be held liable for student-to-student harassment as long as it had the effect of denying educational opportunities. Id. at 1675.

After the tragic events that took place on April 1, 2005, Plaintiff alleges that the district, and its officials, failed to take any remedial action after the incident. Amend Comp. ¶54. Each individual Defendant possessed the requisite knowledge and information regarding the incident such that remedial measures could have been taken, but were not. In addition to failing to take remedial measures regarding the incident, each individual Defendant, permitted further harassment on school grounds during school hours. As specifically pleaded in Plaintiff's Amended Complaint, the individual Defendants were deliberately indifferent to the illicit photographs that were put on the internet, the derogatory writing on the bathroom walls and the ridicule Plaintiff had to endure after the incident at school. Id. at ¶41-45; ¶97-98.

At the time these events occurred, Title IX protection against peer sexual harassment was a clearly established right. See Davis v. Monroe County Bd. of Education, 526 U.S. 629 (1999).

Further, a second clearly established right is the Plaintiff's right to equal access to a public education, without fear of retaliation or abuse. Any reasonable school district official would have known that failing to take any remedial measures, such as disciplining students or contacting legal authorities, would be a violation of the Plaintiff's clearly established rights pursuant to §1983 and Title IX. Defendants contend in their moving papers that "Courts must refrain from second-guessing the disciplinary decisions made by school administrators." Def. Mtn. Dismiss, page 5. However, where a school administrator acts deliberately indifferent towards known harassment, defendants are not entitled to qualified immunity. K.M., et al. v. Hyde Park Central School District, et al., 381 F.Supp.2d 343, 362-363 (S.D.N.Y. 2005).

Moreover, Defendants contend that Plaintiff's requested the home tutoring and, as such, it "cannot be said that the District infringed upon her right to an education." Def. Mtn. Dismiss, page 6. Defendants are mistaken. When the Defendants were informed by Plaintiff's mother that Plaintiff could not physically attend school due to the ongoing harassment and ridicule, Defendants acted deliberately indifferent. Specifically, Defendant Ragon stated that Plaintiff would be "just fine", and that Defendants would "watch over" Plaintiff. Amend Comp. ¶48. Neither was true. Plaintiff's mother responded that Defendants were already doing a very poor job of that. Id. In addition to acting with callous disregard for Plaintiff and her ability to attend school, Plaintiff had to wait three (3) weeks to receive the home tutoring. Id. at 58. Once the home instruction began, it was below satisfactory level and Plaintiff's grades dropped significantly. Id. at 59-60. Therefore, Defendants claim that "it cannot be said that the District infringed upon Plaintiff's right to an education", is blatantly false. Rather, the Defendants' clear failures and utter disregard for Plaintiff were precisely what lead to the unequal access to an education. Further, the fact that Plaintiff was forced to be

-11-

deprived of the social aspects of her public education due to Defendants' inaction cannot be discounted.

As Plaintiff properly alleges that the school district officials, who had supervisory authority over the harassers, reacted to the harassment with deliberate indifference, they are not entitled to qualified immunity. Accordingly, Defendants' motion to dismiss the individual Defendants based on qualified immunity should be denied.

## III. PLAINTIFF ADEQUATELY PLEADED A CLAIM FOR PUNITIVE DAMAGES AGAINST THE INDIVIDUALLY NAMED DEFENDANTS

The Defendants contend that Plaintiff's allegations does not warrant the imposition of punitive damages as the complaint does not allege that the individual defendants' actions were willful, malicious, carried out in gross disregard of their duties or that they were reckless. Contrary to Defendants' assertion that even the most liberal reading of Plaintiff's allegations would not warrant a claim for punitive damages, the following allegations are made in Plaintiff's Amended Complaint:

¶100. Defendants, SEAFORD, RAGON, SUSSMAN, DUFFY and CONBOY's actions represented a reckless and callous disregard for Plaintiff's rights amounting to actions that are punitive in nature.

¶104 By their inaction and failures Defendants failed to provide reasonable conditions of safety and bodily integrity that rose to the level of deliberate indifference for the harm and violations visited on MEGAN TYRRELL.

¶107 The defendants, SEAFORD, RAGON, SUSSMAN, DUFFY and CONBOY, were negligent, careless and / or reckless, in failing to properly supervise their students, and failing to properly train teachers and staff as to methods of supervision. Said negligence/recklessness thus provided the opportunity / "opening" for the defendant / assailants, "JANE and JOHN DOES 1-10" to ridicule, harass and embarrass Plaintiff TYRRELL.

See Plaintiff's Amend. Comp.

As the foregoing indicates, Plaintiff set forth sufficient facts to sustain her claim of punitive damages against the individually named Defendants. The Defendants next argue that Plaintiff's punitive damages claim should be dismissed based on qualified immunity. However, as discussed at length in Point II above, the individually named Defendants are not entitled to qualified immunity as they violated a constitutional rights which, at the time of the incidents complained of, was a clearly established right, of which any reasonable school official would have known. Accordingly, Defendants motion to dismiss the punitive damages claim against the individually named Defendants should be denied.

## IV. PLAINTIFF STATED A VALID CLAIM PURSUANT TO 42 USC §1983 AS THE DEFENDANTS' FAILURE TO PROPERLY INVESTIGATE AND REMEDY THE CHALLENGED HARASSMENT DENIED PLAINTIFF A RIGHT AND/OR PRIVILEGE SECURED BY THE CONSTITUTION

"[I]n order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993). Government official or supervisory employee may be held liable under §1983 upon a showing of deliberate indifference to known sexual harassment. Murrell v. School District No. 1, Denver Colorado, et al., 186 F.3d 1238, 1250, 137 Ed.Law Rep. 474 (10t Cir. 1999). Liability under §1983 must be predicated upon a deliberate deprivation of constitutional rights by defendant, not upon mere negligence. Personal involvement of a supervisory official, required for award of damages under §1983, may be established by evidence that the official, after being informed of a violation through

-13-

report or appeal, failed to remedy the wrong or the official exhibited deliberate indifference to rights of others by failing to act on information indicating that unconstitutional acts were occurring. Johnson, 239 F.3d at 255-256; see also, Jundi v. Estate of Rockafeller, 885 F.2d 1060, 1066 (2d Cir. 1989).

In the case at bar, Plaintiff's Amended Complaint adequately alleges a legally cognizable claim against the individual Defendants, as well as the District, sufficient to withstand Defendants' motion to dismiss. Specifically, pursuant to §1983, Plaintiff alleges that she was denied equal access to a public education. Amend. Comp.¶¶90-106. Title IX does not bar Plaintiff's § 1983 claim for violations of the Equal Protection Clause of the Fourteenth Amendment. This constitutional right provides an independent basis for maintaining Plaintiff's § 1983 claim. Bruneau ex rel. Schofield v. South Kortright Cent., 163 F.3d 749 (2d Cir.1998); see also, K.M., et al. v. Hyde Park, 381 F.Supp.2d at 363 (court upholds Title IX claim as well as §1983 claim against individual defendant.)

The Defendants repeatedly err by assuming that Plaintiff's §1983 claim is based upon the Defendants' failure to *prevent* the tragic events of April 1, 2005. Plaintiff clearly alleges that Defendants failed to take appropriate action, *after* becoming fully aware of the sexual harassment that took place. Further, Plaintiff pleads in her Amended Complaint that the harassment continued on school grounds, during school hours, of which Defendants were made aware. In fact, the Amended Complaint alleges that the Defendants were aware of the pictures that were posted on the internet and still failed to act. Amend. Comp. ¶33.

Defendants also argue that Plaintiff never identified the names of any of the harassers to the District or other Defendants. This contention has no bearing on the instant motion to dismiss for failure to state a claim. The Plaintiff informed the Defendants of the harassment and the Defendants

in turn assured the Plaintiff and her mother that an investigation would be conducted. Amend. Comp. ¶52 The harassment became so severe and pervasive that the mother had to remove her daughter from attending the Defendant District. Amend. Comp.¶44-45 Although Plaintiff pleaded these allegations, among several others, the Defendants state that it is Plaintiff's attempt to "aggregate separate events in order to bring a deliberate indifference claim." See Def. Mtn. Dismiss, page 10. Yet, it is all of these incidents taken as a whole that demonstrates the Defendants repeated disregard for the known harassment that was occurring, not to mention their outright failure to take any remedial measures regarding the April 1st incident.

Defendants further show their deliberate disregard by attempting to rely solely on the Nassau County Police Department. In their papers, the Defendants argue that the police had exclusive jurisdiction to investigate the facts and effectuate arrests. The Defendants here are trying to put all of the onus on the Police Department and shield themselves from taking any responsibility for their deliberate failures. Separate and apart from the duties of law enforcement, school officials have a duty of their own promptly and appropriately address known harassment. See Davis 119 S.Ct. at 1675.

The Plaintiff alleged that the Defendants' created a dangerous condition of property by permitting the assailants of the April 1st incident to return to school without any discipline, and by failing to take any steps to prevent future attacks by the defendant students. See Amend Comp. ¶80. The Defendants outrageously label this allegation inflammatory and that the allegation is made in an "attempt to bypass constitutional requirements for civil right violations." Plaintiff's are perplexed by Defendants' assertion that Plaintiff's mere allegation of the dangerous condition was somehow an attempt by Plaintiff to run afoul on the constitutional requirements of the civil rights actions.

After much contemplation, it remains a mystery as to how Defendants arrived at such a labyrinthine conclusion. This assertion is nothing more than conjecture and rank speculation which is unsupported by any facts and is inappropriate given that there's been no discovery in this case. While they may want to deny that fact as part of their Answer, it cannot be used to support their motion to dismiss. In any event, if the truth is inflammatory, so be it.

The Defendants next mistakenly argue that the Plaintiff must satisfy a standard for deliberate indifference that is completely inapplicable to the case at bar. See Def. Mtn. Dismiss, page 12. The standard of a disregard of an "excessive risk" is a standard set forth Farmer v. Brennan, 511 U.S. 825 (1994), an Eighth Amended cruel and inhumane treatment case that was cited by Defendants in support of their assertions. The holding there is, "In cases involving failure to prevent harm, Eighth Amendment is violated only when inmate shows he is incarcerated under conditions posing substantial risk of serious harm, and that officials displayed "deliberate indifference" to inmate health or safety." Id. The instant case is clearly distinguishable as it is well settled that "deliberate indifference to discrimination can be shown from a defendant's actions or inaction in light of known circumstances. Gant v. Wallingford Board of Ed., 195 F.3d 134 (2d Cir. 1999). Further, deliberate indifference can be found when the defendant's response to known discrimination "is clearly unreasonable in light fo the known circumstances." Davis, 119 S.Ct. at 1674.

Finally, the Plaintiff clearly made allegations in her Amended Complaint with respect to the Defendants' permitting, allowing and thus, condoning continued harassment on school grounds after the incident. See Amend. Comp. ¶¶114.

Defendants cite to over fourteen (15) allegations in Plaintiff's Amended Complaint regarding her claim pursuant to §1983, each of which adequately supports her claim against the Defendants.

-16-

Plaintiff properly pleaded that Defendants actions rose to the level of deliberate indifference thereby sustaining her claim pursuant to §1983. Clearly, as persons in control of these factors, Defendants' chose to take no action and encourage the hostile and abusive environment to fester, thus allowing Plaintiff's rights to be violated.

## V. THE NEGLIGENCE AND THE NEGLIGENT INFLICTION OF EMOTION DISTRESS CAUSES OF ACTION MUST BE SUSTAINED AS THESE CLAIMS ARE ADEQUATELY ALLEGED IN PLAINTIFF'S COMPLAINT AND IT IS PREMATURE TO DISMISS THESE CLAIMS AT THIS EARLY STAGE OF THE LITIGATION

Under New York law, a claim for IIED requires: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the jury; and (4) severe emotional distress." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). While we agree that in this Circuit it has commonly been held that the tort of intentional infliction of emotional distress is a difficult standard to satisfy, determining whether or not Plaintiff satisfies this rigorous standard is not for this Court to decide at this time. See Clayton v. City of Poughkeepsie, 2007 WL 2154196 (S.D.N.Y. 2007) (standing for the proposition that based on the facts alleged in the Complaint for the claim for excessive force, court could not conclude as a matter of law that plaintiff could not recover on a theory of intentional infliction of emotional distress). Plaintiff has likewise adequately pleaded all of the elements of negligence.

Plaintiff adequately pleaded all of the elements of the foregoing state law claims. Once again, Defendants may deny the factual allegations set forth in Plaintiff's Amended Complaint, but cannot argue that the claim must be dismissed because the allegations are inflammatory. Plaintiff and her family, in good faith allege that failing to address and/or remedy the sexual assault that took

place, and further permitting harassment on school grounds is conduct that is extreme and outrageous that goes beyond the bounds of decency in a civilized society. Whether or not the record will support these allegations cannot be determined at this time and these claims must withstand a motion to dismiss. Further, for all of the reasons set forth in Point I, the state law claims should not be dismissed for failing to comply with New York's General Municipal Law Notice of Claim requirements.

## VI.   PLAINTIFF'S COMPLAINT DOES SET FORTH A CAUSE OF ACTION UNDER TITLE IX, 20 U.S.C. § 1681

Title IX, like its model Title VII, sought to accomplish two related, but different, objectives. First, Congress wanted to avoid the use of Federal resources to support discriminatory practices. Second, it wanted to provide individual citizens effective protection against those practices. Cannon v. Univ. of Chicago, 441 U.S. 677(1979). Title IX provides in part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. §1681(a). A private Title IX action lies against educational institutions that are federally funded recipients, when they have actual knowledge of the harassment, and the harassment was so severe, pervasive, and objectively offensive that it had the systemic effect of denying access to an individual of educational programs; and an inadequate response on the part of the institution that in turn shows that the federally funded recipient acted with deliberate indifference to the known acts of harassment. Davis v. Monroe County Bd. Of Edu., 526 U.S. 629 (1999).

It is undisputed that Defendant Seaford (hereinafter "Seaford"), is a part of Seaford Union Free School District, therefore a federally funded recipient. Amed. Comp ¶ 109. It is also undisputed

that Defendant Sussman, a Seaford High School social worker, and Assistant Principal, Dr. Niedel were put on actual notice in regard to the sexual assault that occurred on April 1st 2005 to Plaintiff, the posting of photographs on the internet, and the incessant derogatory comments made, by Plaintiff Megan Tyrell's (hereinafter "Plaintiff") peers. Amed.Comp ¶ 25; ¶ 31. "Actual notice requires a complaint of sexual harassment by the victim or a member of the victim's family to a school administrator." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998).

The relentless harassment the Plaintiff was forced to endure by her peers in school amounts to severe, pervasive, and objectively offensive behavior, and thus created a hostile environment. Peers in school were whispering about Plaintiff and ridiculing her, calling her a lesbian and other names. Amend. Comp. ¶45. A hostile environment claim requires that it is "permeated with 'discriminatory intimidation,' ridicule and insult that is sufficiently severe, pervasive [and objectively offensive] to alter the conditions of the protected class." Hayut v. State Univ. of N.Y., 352 F.3d 733 (2d Cir. 2003). The Plaintiff was denigrated and embarrassed by students who relentlessly chose to place negative connotations on Plaintiff by calling her "lesbian" among other harmful names and by students posting pictures of the Plaintiff's assault and molestation, depicting explicit sexual interaction between the Plaintiff and another female and broadcasting those pictures all over the internet. Amed.Comp ¶ 42. Also, some students took it upon themselves to post the pictures on Seaford Highschool's computer class computer screens as a desktop wallpaper, as well as writing derogatory statements about Plaintiff over all the school's bathroom walls. Id at ¶ 42.

Finding harassment "pervasive" means that the challenged incidents are "more than episodic;" they are nonstop and concerted. Hayut, 352 F.3d at 734. The actions by the Plaintiff's peers were pervasive because they "permeated the classroom atmosphere" Id. The Plaintiff was

subjected to ridicule and harassment throughout the entire school and it subsequently affected all aspects of her education and life. The severe and objectively offensive conduct that had an adverse affect on the Plaintiff's educational opportunities occurred on school grounds, during school hours and some with the use of school resources, therefore, Seaford Highschool had "substantial control" over the conduct of Seaford High School students, yet did not exercise that control.

The pictures that were posted on the internet and the degrading comments that were made by the Plaintiff's peers are severe and objectively offensive. Severe and objectively offensive comments transcend the bounds of propriety and decency, and [is] more then mere joking comments or occasional vulgar banter, but are sexually charged and designed to convey a certain image. Hayut, 352 F.3d at 747. In assessing the severity of harassment, consideration will be given to the circumstances, expectations, and relationships of the parties. Davis, 526 U.S. at 640. The activities by the Plaintiff's peers that were permitted to transpire, by Seaford High School, are enough to offend a reasonable person, and those actions subsequently hosted a hostile environment for the Plaintiff.

In Davis, the court stated that "In a school setting, it is understandable that students may engage in behavior that would be unacceptable if conducted by adults." The Davis court applied this standard with the pre-set notion that students, specifically very young students, will act in an unacceptable manner compared to the expectations of adults, and therefore, not an actionable Title IX claim. However, when this standard is applied in peer-on-peer Title IX cases with similar conduct the courts still found an actionable Title IX claim. In Riccio v. New Haven Bd. of Edu., 467 F.Supp.2d 219 (D. Conn. 2006), the court held that a jury could reasonably find that explicit name-calling, that extended for a long period time hosted a sexually hostile environment. Id.

The Plaintiff was deprived access to normal educational opportunities and benefits provided by the school. Plaintiff's grades drastically dropped, she was essentially forced into home schooling, and the quality of her home schooling was sub-par at most. "The Title IX statute not only protects students from discrimination but also shields them from being excluded from participation in or denied the benefits of a recipient's education program." <u>Davis</u>, 526 U.S. at 653. "An evidentiary link between the harassment and access to educational services, balanced with the persistence and severity of harassment, can work to establish a disadvantaged learning environment for the victim." <u>Davis</u>, 526 U.S. at 625. Since the time of the incident, Plaintiff school performance dropped to below satisfactory level. <u>Amed.Comp</u> ¶ 57. In fact, Plaintiff's report card as of the Spring Semester of 2005 contained 'incomplete' marks for at least two subjects. <u>Id</u> at ¶ 57. At no time prior to the incident did Plaintiff have any incomplete grades on her report card. In <u>Hayut</u>, the plaintiff testified that, because of her treatment, she was unable to concentrate on her studies; she felt humiliation, emotional distress, suffered sleep deprivation, and no longer had the will to attend classes. The court held in Hayut that evidence of the plaintiff's distress which impaired her from taking classes was "enough to render this issue one for a trier of fact." <u>Hayut</u>, F.3d at 748.

Likewise in <u>Riccio</u>, 467 F.Supp.2d at 226 (2nd Cir 2006), a student's inability to attend school in a normal fashion and her denial of educational resources such as counseling for coping with the harassment was evidence of deliberate indifference and denial of educational opportunities. The <u>Riccio</u> court stated that daily verbal harassment was sufficient, if believed by a jury, to support a finding of a denial of educational opportunities. <u>Id</u>. Unlike the aforementioned cases, where proper discovery had taken place, the instant motion is a pre-answer motion to dismiss. No discovery has been conducted in this matter and Defendant's motion is clearly premature.

The Plaintiff completely missed approximately three (3) weeks of school before Defendant Seaford provided home instruction, a service which Mrs. Tyrell was forced to adamantly fight for, in order for it to be provided to her daughter. Amed.Comp ¶ 58. Plaintiff was forced to receive home instruction, the educational services provided for the home instruction were far below satisfactory. Amed.Comp ¶ 59. Tutors came to the Tyrell home void a proper syllabus or books. Id. Additionally, at no time did Seaford provide any help or aid to Plaintiff mentally or emotionally to aid her in getting through this traumatic experience. Amed.Comp ¶ 61. Plaintiff did not experience any serious trauma in her life prior to this life changing event. However, since the event the Plaintiff has suffered severe trauma and emotional distress, causing a drop in her academic performance and her overall educational experience; therefore, denying her of educational opportunities.

Deliberate indifference must, at minimum, cause students to undergo harassment or make them liable or vulnerable to it. Davis, 526 U.S. at 657. Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, and when remedial action only follows after lengthy and unjustified delay. Doe v. Derby Board of Educ., 451 F.Supp.2d 447 (2nd Cir. 2006). In Vance v. Spencer County Public Sch. Dist., 231 F.3d 253 (6th Cir. 2000), a school merely speaking to a students' harasser and warning him not to harass the plaintiff any further, was found to be deliberately indifferent. After countless discussions between the school administrator's and the harassing students, the incessant harassment continued. In the instant case, Defendant failed to even investigate the complaints no less speak to the offending students that would potentially lead to some sort of remedial action. In response the Plaintiff's mother's request for home schooling and something to be done to eliminate the harassment her daughter was being subjected to; Defendants simply stated " [Plaintiff Tyrrell] will

be just fine." Amed.Comp ¶48.

There are several other cases that support Plaintiff's position, For instance in Doe v. East Haven Bd. of Educ., WL 2006 ( 2nd Cir. Conn), a student's harassment began after the victim's report of her off-campus rape by two male high school students, and the harassment ensued in school and it consisted of persistent verbal abuse reflecting sex-based stereotypes and questioning veracity of her account of the incident. Id. The East Haven court held that a reasonable fact-finder could conclude, in the student's Title IX action based upon school authorities' deliberate indifference to student-on-student sexual harassment, that school authorities acted in clearly unreasonable fashion. It took the school five weeks from the off-campus incident and several weeks from her complaint of verbal harassment before school authorities took concrete action to get perpetrators of harassment to stop. The court held the school's action constitutes deliberate indifference. Id.

Likewise, in Derby Board of Educ., 451 F.Supp.2d at 447, a student was subjected to prolonged sexual harassment after an off-campus sexual assault. The school allowed the victim's attacker, who was also a student of the high-school, to stay in school along with the victim. His presence exposed the plaintiff-victim to emotional distress and harassment. The court found evidence that the board took no disciplinary action whatsoever against the harasser until several months after the alleged incident and that is a component of a jury finding of deliberate indifference. Id. In the instant case, Plaintiff was indeed sexually assaulted off-school property and not during school operation hours; however, similar to the aforementioned cases, the constant harassment that essentially denied her appropriate educational opportunities occurred during school hours and on Seaford High School's property.

At no time did Seaford provide any help or aid to Plaintiff mentally or emotionally or aid her

in getting through this traumatic experience. As a result of Seaford's inaction the Plaintiff was forced to live and be educated in an emotionally suppressive environment, without any help from Defendants. Defendants failed to address the serious injustice suffered by Plaintiff, and Defendants failed to discipline the student(s) involved in the incident after repeated requests by Plaintiff's mother for the matter to be investigated and for the incident to be reported to the appropriate legal authorities. Seaford's apathetic approach in addressing the Plaintiff's ordeal constitutes deliberate indifference.

In response to Defendants claim that the school was not on notice as for the verbal harassment, because Defendants was absent knowledge of the identities of the verbal abusers; The Office for Civil Rights, issued An Investigative Guidance on Racial Incidents and Harassment Against Students at Educational Institutions in 1994 providing, ".. The obligation of school districts with notice to remedy racially hostile environments applies "regardless of the identity of the person(s) committing the harassment..." See 59 Fed. Reg. 11,448, at 11,448 (1994). Although the Plaintiff's reference to this Report, although it involves race discrimination, is not used because it is "directly" applicable, but because the reasoning is transferrable to the instant set of facts as gender can be easily substituted for race in this case. In this matter, Plaintiff has adequately set forth a prima facie cause of action under Title IX, and it should not be dismissed at this stage of the litigation. It is respectfully requested that the Court deny Defendants' motion to dismiss and allow discovery to proceed.

## CONCLUSION

For all the foregoing reasons, Defendants Motion to Dismiss Plaintiff's Amended Complaint

should be denied.

Dated: Hempstead, New York
July 8, 2009

Respectfully submitted,
LAW OFFICES OF
FREDERICK K. BREWINGTON

By:

FREDERICK K. BREWINGTON and
MILI MAKHIJANI
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959