UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MEGAN TYRRELL,

                                        Plaintiff,

                    -against-

                                                                    **REPORT AND**
SEAFORD UNION FREE SCHOOL DISTRICT,                                  **RECOMMENDATION**
SEAFORD HIGH SCHOOL, MICHAEL J. RAGON, in his                       CV 08-4811 (SJF)(MLO)
individual and official capacity, PAULA SUSSMAN, in her
individual and official capacity, GEORGE DUFFY III, in his
individual and official capacity, and BRIAN CONBOY, in his
individual and official capacity,

                                        Defendants.
-------------------------------------------------------------------------X
**ORENSTEIN, MICHAEL L., U.S. Magistrate Judge:**

        Before the court, on referral from District Judge Feuerstein, is a motion to dismiss the

amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that

follow, the undersigned recommends that the motion to dismiss be granted in part and denied in

part.

                                    **BACKGROUND**

        Plaintiff, Megan Tyrrell, filed a notice of claim on June 27, 2005 against Seaford High

School and commenced this action on November 28, 2008.  (See Notice of Claim, annexed as

Ex. H to Defendants' Motion).  On April 27, 2009, she filed an amended complaint alleging that

the defendants, Seaford Union Free School District ("the District"), Seaford High School ("the

School"), Michael J. Ragon ("Ragon"), Paula Sussman ("Sussman"), George Duffy III ("Duffy"),

and Brian Conboy ("Conboy"), (collectively "the defendants"), violated her federal and state

constitutional and civil rights.  The defendants seek dismissal of the complaint in its entirety

pursuant to Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

I.      The Amended Complaint

The following facts have been gleaned from the amended complaint and are presumed to be true for the purpose of deciding the defendants' motion.

Plaintiff, born on November 29, 1989, was a student at Seaford High School at all times relevant to the amended complaint. (Compl. at ¶ 7). According to the amended complaint, on April 1, 2005, the plaintiff was sexually assaulted and molested by students from Seaford High School and Massapequa High School off-campus after school hours. (Id. at ¶17). The amended complaint alleges that the plaintiff was drugged and made to perform derogatory sexual acts with another female student during which the plaintiff was photographed by a student from Massapequa High School. (Id. at ¶¶18-19). According to the amended complaint, such photographs of the plaintiff were then posted on the internet by students from Seaford High School and displayed as "wallpaper" on computer screens in computer class at Seaford High School. (Id. ¶¶ at 22, 38).

Shortly after the alleged incident, a friend of the plaintiff expressed concern to guidance counselors at his high school, St. Anthony's, that plaintiff may be a threat to herself and, it is alleged that the guidance counselors immediately contacted defendant Sussman, a social worker at Seaford High School, regarding the plaintiff. (Id. at ¶¶ 24-25). According to the amended complaint, defendant Sussman called the plaintiff out of class on April 4, 2005 to speak with her regarding the events alleged to have occurred on April 1, 2005. (Id. at ¶ 27). Plaintiff allegedly conveyed to defendant Sussman that a few of the students involved in the events of April 1, 2005 attended Massapequa High School. (Id. at ¶ 28). Although defendant Sussman called the

Massapequa High School guidance department concerning the incident, defendant Sussman did not report such events to the plaintiff's parents or any school officials. (Id. at ¶¶ 28-29).

According to the amended complaint, the photographs of the plaintiff performing derogatory sexual acts with another female student taken during the April 1st incident were posted on the internet and used as "wallpaper" on computer screens in computer class at Seaford High School. (Id. at ¶¶ 20, 39). Plaintiff's mother learned on April 13, 2005 that the explicit and inappropriate photographs taken of her daughter on April 1, 2005 had been posted on the internet. (Id. at ¶¶ 28-29). Accordingly, plaintiff's mother attempted to meet with defendant Sussman at Seaford High School on April 15, 2005 but was not successful. (Id. at ¶32). When Mrs. Tyrrell ultimately met with defendant Sussman on April 18th, defendant Sussman did not respond to her questions citing student confidentiality notwithstanding the fact that Mrs. Tyrell is the infant student's mother. (Id. at ¶34). Mrs. Tyrrell took her daughter out of school on April 20, 2005 because plaintiff's peers were whispering about her and ridiculing her in school by, among other things, calling her a lesbian and writing derogatory comments about her on the bathroom walls. (Id. at ¶¶44-46). According to the plaintiff, the defendants failed to take any action regarding the pictures of plaintiff posted on school computers despite their alleged admitted knowledge thereof on April 11, 2005 (Id. at ¶ 37), the writings on the bathroom walls about the plaintiff or any of the harassing statements that were made concerning the plaintiff. (Id. at ¶46). The next day, April 21, 2005, the plaintiff filed a police report with the 7th Precinct regarding the April 1 incident. (Id. at ¶49).

Defendant Seaford High School and defendant Seaford Union Free School District have a school policy regarding "acceptable use" of the Internet. (Id. at ¶40). The policy states, in

relevant part:

> Filtering
>
> To the greatest extent practicable, the District will block access for both minors and adults to visual depictions that are (1) obscene, (2) child pornography or (3) harmful to minors. Access shall be blocked to such material that appears on the Internet or other forms of electronic communication.
>
> Definitions
>
> Obscenity shall be defined by section 1460 of title 18 of the United States Code. Child pornography shall be defined by section 2256 of title 18 of the United States Code. The District shall determine what it deems to be "harmful to minors" and use filtering technology in accordance with that determination.

(Id. at ¶ 40). According to the amended complaint, the defendants failed to follow this policy.

On April 22, 2005, Mrs. Tyrrell called the school superintendent, George Duffy, III, and requested home schooling for her daughter. (Id. at ¶ 40). Defendant Ragon called Mrs. Tyrrell on May 2, 2005 and advised that the district will provide the plaintiff with home instruction and defendant Duffy confirmed that by letter also on May 2, 2005. (Id. at ¶¶ 50-51). On May 3, 2005, defendant Conboy advised Mrs. Tyrrell that there will be a full investigation regarding the plaintiff. (Id. at ¶ 52).

According to the amended complaint, the plaintiff has suffered severe trauma and emotional distress. The plaintiff missed three weeks of school between the time her mother took her out of school and the district provided home instruction. (Id. at ¶ 56). In addition, her school performance dropped below satisfactory level. (Id. at ¶ 57). Further, the amended complaint alleges that the home instruction provided to the plaintiff by the district was unsatisfactory in that the tutors arrived for instruction without a proper syllabus or books. (Id. at ¶ 59). Having not

received adequate educational services, the plaintiff's family moved out of the District to a separate local school district in 2006. (Id. at ¶ 63-64).

Based on these allegations, the plaintiff has asserted federal claims against defendants Seaford, Ragon, Sussman, Duffy and Conboy pursuant to 42 U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681 alleging a violation of her federally protected right to have equal access to the education system and to enjoy an education free from harassment, ridicule, embarrassment and hostility. In addition, the plaintiff alleges state tort law claims of negligent supervision, negligent infliction of emotional distress[1], and negligence/gross negligence claims against defendants Seaford, Ragon, Sussman, Duffy and Conboy. Plaintiff also alleges battery claims against defendants "John and Jane Does 1-10."

II.     Defendants' Motion to Dismiss

Against these claims, the defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). More specifically, the defendants urge that this court dismiss the state law claims because the plaintiff did not file an adequate notice of claim. Defendants also argue that the individually named defendants, Ragon, Sussman, Duffy and Conboy, who are sued in their individual and official capacities, are entitled to qualified immunity and thus should be dismissed from this action. In addition, the defendants seek dismissal of the punitive damages claims as well as the federal Title IX and § 1983 claims for

---

[1]The court notes that the plaintiff's opposition brief analyzes the plaintiff's emotional distress claim as one for the intentional rather than negligent infliction of such distress. However, the amended complaint includes only a negligent infliction of emotional distress claim. Accordingly, the court limits its review at this time to the claim in the amended complaint for the negligent infliction of emotional distress. Following discovery, plaintiff may seek leave to amend her complaint to include an intentional infliction of emotional distress claim, if warranted.

failure to set forth any such cognizable claims. Finally, the defendants seek dismissal of the state law negligence claims.

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (internal citation omitted). Thus, "[t]he new plausibility standard 'obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.'" <u>Mitchell v. Kugler</u>, CV 07-1801(JG), 2009 WL 160798, at *4 (E.D.N.Y. Jan. 23, 2009) (quoting <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007)). Finally, "in deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." <u>Larson v. Essef Distributors, Inc.</u>, CV 09-2133(SJF), 2009 WL 4067280, at *3 (E.D.N.Y. Nov. 19, 2009) (citing <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008)). With these standards in mind, the court considers the defendants' motion.

## I. <u>Adequacy of the Notice of Claim</u>

Defendants seek dismissal of all state common law and statutory supplemental claims brought pursuant to the notice of claim filed by the plaintiff on June 27, 2005. Defendants

contend that the notice of claim does not meet the statutory requirements and thus was insufficient to apprise the school defendants of the alleged negligent or reckless acts or how such acts caused injury to the plaintiff.  Given the inadequacy of the notice of claim, defendants claim that they could not promptly investigate the plaintiff's claims and are now manifestly prejudiced from doing so.

Pursuant to Section 50-e of the New York General Municipal Law, a claimant must, as a condition precedent to bringing legal action founded upon tort against a municipality, serve a written notice of claim on such municipality within 90 days after the claim arises.  N.Y. Gen. Mun. Law §§ 50-e(a) and 50-i(1)(a)(McKinney 2007).  Similarly, the New York State Education Law requires that a written notice of claim be filed with the school district within three months after the accrual of such claim.  N.Y. Educ. Law § 3813(a) (McKinney 2001).  Both statutes require that the notice of claim set forth the nature of the claim including the time, place and manner in which the claim arose as well as the damages or injuries claimed to have been sustained.  Parise v. New York City Dept. of Sanitation, 306 Fed. Appx. 695 (2d Cir. Jan. 16, 2009) (citing N.Y. Gen. Mun. Law § 50-e(2)); Donlon v. Board of Educ. of the Greece Central School Dist., No. 06 CV 6027, 2007 WL 108470 (W.D.N.Y. Jan. 12, 2007).  The New York Court of Appeals has determined that "the requirements of Section 50-e(2) need not be 'stated with literal nicety or exactness.'" Parise, 306 Fed. Appx. at 697 (citing  Brown v. City of New York, 95 N.Y.2d 389, 718 N.Y.S.2d 4, 740 N.E.2d 1078, 1080 (2000) (internal quotation marks omitted)).  Rather, the proper inquiry "is merely whether [the notice of claim] includes information sufficient to enable the [municipality] to investigate." Id. (internal quotation marks omitted); see also Donlon, 2007 WL 108470 at *2 ("The purpose of this notice of claim

requirement [pursuant to § 3813] is to provide prompt notice of claims so that an investigation may be made before it is too late for the investigation to be effective.") (citing Parochial Bus. Sys., Inc., v. Bd. of Educ. of City of New York, 60 N.Y.2d 539, 547 (1983)).

Here, it is undisputed that a notice of claim was filed on the infant plaintiff's behalf with the School on June 27, 2005. Plaintiff alleges that the School conducted an investigation of the incident that is the subject of the notice of claim beginning on April 4, 2005. (Am. Compl. at ¶ 26). Indeed, defendant Conboy is alleged to have called Mrs. Tyrrell on May 3, 2005 to report that "there will be a full investigation" regarding the matter at issue. (Id. at ¶ 52). Given that the court is required to accept the allegations in the complaint as true, the court declines to find that the notice of claim was insufficient to allow the School to conduct an investigation and is thereby prejudiced in its defense of the plaintiff's claims.[2] Following the completion of discovery, defendants may seek summary judgment on such claims, if warranted. However, dismissal at this stage in the proceeding is premature.

II.    Qualified Immunity Defense

Defendants seek dismissal of the Section 1983 claim brought against the individual Seaford defendants, Ragon, Sussman, Duffy and Conboy claiming that they are entitled to qualified immunity. More specifically, the defendants contend that because the April 1st incident involved individuals who were not under the direction, control or supervision of the

---

[2]Although the plaintiff invites the court to consider a letter dated July 20, 2005 from the School's insurance company, the court declines to do so. Such documentary evidence is outside the pleadings and improper on a motion to dismiss the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002); Wellnx Life Sciences, Inc. v. Iovate Health Sciences, CV 06-7785(PKC), 2007 WL 2789469, at *1-2 (S.D.N.Y. Sept. 26, 2007).

Seaford defendants, there can be no deprivation of the plaintiff's constitutional rights by the Seaford defendants. Insofar as the plaintiff claims that the Seaford school officials failed to adequately discipline its students, defendants also urge that the court refrain from second-guessing disciplinary decisions made by school administrators. Finally, to the extent plaintiff claims that she was deprived of her right to an education, defendants argue that plaintiff was removed from the school and placed on home tutoring by her own parents, and not as a result of any disciplinary action taken by the School or the District. Thus, defendants argue that these defendants are entitled to qualified immunity.

It is well-established that "qualified immunity protects government officials from liability for civil damages as a result from the reasonable execution of their official duties." Keene v. Schneider, CV 09-872, 2009 WL 3463892, *1 (2d Cir. Oct. 29, 2009) (citing Pearson v. Callahan, __ U.S.__, 129 S. Ct. 808, 815 (2009)). As long as "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law," such immunity is available. Tierney v. Davidson, 133 F. 3d 189, 196 (2d Cir. 1998). A law is "clearly established" where it is "particular enough to give the government officials 'fair warning' that their behavior is over the line" and means more than a general protection found within the constitution. Keene, 2009 WL 3463892 at *1 (citing Hope v. Pelzer, 536 U.S. 730, 740-41 (2002)). The court is charged with assessing whether the law allegedly violated was "clearly established" and, if so, whether the amended complaint is sufficiently detailed such that the claim is plausible. Pearson, 129 S. Ct. at 818-19.

Although not a model of clarity, plaintiff's Section 1983 claim purports to allege that the defendants violated the Due Process Clause of the Fourteenth Amendment by denying plaintiff

equal access to the education system as well as an education free from harassment, ridicule, embarrassment and hostility. Am. Compl. at ¶¶ 91-92, 95-96, 102. There can be little doubt that equal access to a public education is a clearly established constitutional right. <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 119 S. Ct. 1661 (1999); <u>K.M. v. Hyde Park Central School Dist.</u>, 381 F. Supp.2d 343, 362-63 (S.D.N.Y. 2005); <u>Mennone v. Gordon</u>, 889 F. Supp. 53, 58 (Conn. 1995) ("By forcing plaintiff to attend classes in an environment in which she was sexually harassed and failing to offer and publish procedures and mechanisms for addressing sexual harassment, the defendants have excluded plaintiff from participation in and denied plaintiff the benefits of an education and subjected the plaintiff to discrimination . . . ."). The law is equally clear that "the Court must give substantial deference to school administrators' determinations." <u>Saggio v. Sprady</u>, 475 F. Supp.2d 203, 211 (E.D.N.Y. 2007) (citing <u>Davis</u>, 526 U.S. at 648, 119 S. Ct. 1661) (courts must "refrain from second-guessing the disciplinary decisions made by school administrators"). Accordingly, the Second Circuit has guided the district courts that "[t]he ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant. . . . Thus . . . a plaintiff must show that the defendant's indifference was such that the defendant intended the discrimination to occur." <u>Saggio</u>, 475 F. Supp.2d at 211 (quoting <u>Gant v. Wallingford Bd. of Educ.</u>, 195 F.3d 134, 140 (2d Cir. 1999)).

With regard to the remaining defendants, the amended complaint describes a campaign of harassment targeted at the plaintiff and that the School and its officers and employees failed to take any remedial action thereby permitting the harassment by fellow students during school hours and on school grounds to continue. (Am. Compl. at ¶¶ 20, 39, 44-46). The amended complaint makes clear that each of the named individual defendants had sufficient knowledge

and information concerning the complained of behavior such that they could have taken action but did not. (Am. Compl. at ¶ 37). Indeed, the amended complaint describes that illicit photographs that were taken of the plaintiff during the April 1, 2005 incident were displayed as "wallpaper" on computer screens in computer class at the School, and that other School students were ridiculing the plaintiff by calling her a lesbian and writing derogatory comments about her on the School bathroom walls. (Am. Compl. at ¶¶ 20, 39, 44-46). Moreover, the amended complaint contends that the harassment had a concrete, negative effect on her ability to receive an education. (Am. Compl. at ¶¶ 44-46, 57). Finally, the amended complaint suggests that the plaintiff may be able to demonstrate both actual knowledge and deliberate indifference on the part of the defendants, who are alleged to have made no effort to stop the harassment. (Am. Compl. at ¶¶ 25, 33, 36, 46). Given these allegations, the undersigned cannot find at this stage of the proceedings that all or some of the individual Seaford defendants acted in an objectively reasonable matter and are entitled to qualified immunity on her Section 1983 claim. Scaggs, 2007 WL 1456221 at *14 n.11 ("[I]t is impossible to determine at this stage of the litigation whether such individuals are protected from liability on the basis of qualified immunity."). Accordingly, the undersigned recommends that this prong of the defendants' motion be denied.

III.     Section 1983 Claim

Defendants contend that the Section 1983 claim must be dismissed because the amended complaint fails to set forth a cognizable federal claim. "To state a claim for relief under Section 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under color of state law." Scaggs v. New York State Department of Education, CV 06-799(JFB), 2007 WL 1456221, at *12

(E.D.N.Y. May 16, 2007) (citing 42 U.S.C. § 1983).

It is well-established that "Section 1983 does not itself provide substantive rights, but in fact offers 'a method for vindicating federal rights elsewhere conferred.'" Scaggs, 2007 WL 145221, at *12 (quoting Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)) (add'l citations omitted).  Plaintiff's Section 1983 claim is based on a violation of the Due Process Clause of the Fourteenth Amendment.  Plaintiff alleges that the defendants, who are state actors, knew of the need to protect the plaintiff from the harassment but made a deliberately indifferent choice not to take any action.  The amended complaint is sufficiently detailed in this regard.  See Am. Compl. at ¶¶ 35, 37-38, 40, 45-46, 96, 97.  Given these allegations, plaintiff's Section 1983 claim is plausible.  Accordingly, the undersigned recommends that this prong of the defendants' motion be denied.

IV.    Punitive Damages Claim

Defendants also seek dismissal of the claim for punitive damages against the District and the School as well as the individually named defendants sued in their official and individual capacities, namely Ragon, Sussman, Duffy and Conboy.  According to the defendants, the District and School are public corporations and are thus exempt from the assessment of punitive damages.  Plaintiff does not address this argument in her opposition papers.

The law is clear that a school district is immune from a claim for punitive damages. Pierce v. Sullivan West Central School Dist., 379 F.3d 56, 58 fn.3 (2d Cir. 2004) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748, 68 L. Ed.2d 616 (1981)); see also Flores v. Saulpaugh,115 F. Supp.2d 319, 320 n.2 (N.D.N.Y. 2000) ("Municipal corporations are immune from punitive damages claims.  Therefore, plaintiff's claim for punitive damages against

the District is dismissed.") (citations omitted). Accordingly, insofar as the plaintiff seeks

punitive damages against the District and the School, the undersigned recommends that such

claims be dismissed. For the same reason, the claim for punitive damages cannot lie against the

individual defendants sued in their official capacities and should likewise be dismissed. Scaggs

v. New York State Dept. of Educ., CV 06-799(JFB), 2007 WL 1456221, at *14 (E.D.N.Y. May

16, 2007) (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978) (holding that

"official-capacity suits generally represent only another way of pleading an action against an

entity of which an officer is an agent.")) (add'l citations omitted).

  With regard to the individually named defendants sued in their individual capacities, the

defendants contend that the amended complaint is devoid of allegations of willful or malicious

conduct sufficient to warrant the assessment of punitive damages. In response, the plaintiff relies

on paragraphs 100, 104, and 107 of her amended complaint to demonstrate the sufficiency of the

allegations.

  As a threshold matter, the extent to which the plaintiff seeks punitive damages is not at all

clear from her pleading. There are only two places in the amended complaint where "punitive

damages" are even mentioned. The first is in the Preliminary Statement at ¶ 1 which reads:

> 1. This is a civil action, seeking monetary and injunctive relief
> for the Plaintiff MEGAN TYRRELL. Plaintiff asserts
> federal and state law claims for denial of due process and
> violations of the Plaintiffs' [sic] constitutional and civil
> rights under the United States Constitution, Title IX,
> Educational Amendments of 1972, § 901(a), as amended,
> 20 U.S.C.A. § 1681, *et seq*., 42 U.S.C. § 1983. Plaintiffs'
> [sic] state law claims including [sic], negligence/gross
> negligence, failure to supervise, negligent infliction of
> emotional distress, battery and punitive damages.

Am. Compl. at ¶ 1.  The second and final place where punitive damages are mentioned is in the

Prayer for Relief at subsection (j) of the Wherefore clause, which reads as follows:

> **WHEREFORE**, the Plaintiffs [sic] request the following damages
> and relief:
>
> j.    Compensatory and Punitive damages, as
>       outlined in the aforementioned paragraphs
>       and aforementioned counts, in total of
>       twelve million ($35,000,000.00), [sic] as
>       well as costs and attorneys fees pursuant to
>       42 U.S.C. § 1988 and 42 U.S.C. § 3612, and
>       as otherwise allowed by law; and . . .

Am. Compl. at page 21.  As noted above, plaintiff's papers in opposition to this prong of the

defendants' motion to dismiss address only her Section 1983 claim, citing only to paragraphs

100, 104, and 107 of her amended complaint in an attempt to demonstrate the sufficiency of the

allegations against the individual defendants sued in their individual capacity for punitive

damages.  Thus, the court too limits its analysis of the plaintiff's claim for punitive damages to

the Section 1983 claim against the individual defendants sued in their individual capacity.

Upon a careful review of the amended complaint, the court finds that the bare bones

allegations fail to set forth a plausible claim for punitive damages against the individual

defendants under Section 1983.  Wholly absent from the amended complaint are any facts to

support liability for punitive damages.  Accordingly, the undersigned recommends that the court

grant the defendants' motion insofar as it seeks to dismiss the Section 1983 claim for punitive

damages against the individual defendants.

V.    Negligence Claims

Plaintiff's first three causes of action are for state law negligence.  Plaintiff alleges claims

for negligent supervision/failure to supervise, negligence/gross negligence, and negligent infliction of emotional distress. (Am. Compl. at ¶¶ 68-83). Defendants seek to dismiss the "negligence and the negligent infliction of emotional distress" claims at page 13 of their brief in a half-page argument devoid of any citation or legal authority in support of their position. Further complicating the court's consideration of this prong of the defendants' motion is that the plaintiff's opposition is limited to an analysis of an "intentional" infliction of emotional distress claim. As noted earlier, the amended complaint does not allege an intentional infliction of emotional distress claim.

To state a claim for negligence under New York law, a plaintiff must allege that: (1) the plaintiff was owed a duty of care by the defendant; (2) a breach of such duty by the defendant; and (3) as a proximate result of the defendant's breach, the plaintiff suffered damages. King v. Crossland Sav. Bank, 111 F.3d 251, 259 (2d. Cir. 1997). "Where a defendant's negligence causes only emotional injury to a plaintiff, and not physical injury, the plaintiff can recover against the defendant through a claim for negligent infliction of emotional distress." JG & PG v. Card, 08 Civ. 5668(KMW), 2009 WL 2986640 (S.D.N.Y. Sept. 17, 2009) (citing Ornstein v. N.Y. City Health & Hosp. Corp., 10 N.Y.3d 1, 852 N.Y.S.2d 1, 881 N.E.2d 1187, 1189-90 (2008)).

Given the parties submissions, upon review of the allegations most favorably to the plaintiff as the court must do at this stage in the litigation, the court is unable to conclude at this early stage in the proceeding that the negligence claims must be dismissed as a matter of law. Accordingly, the undersigned recommends that this prong of the defendants' motion to dismiss be denied.

VI.   <u>Title IX Claim</u>

Defendants also seek dismissal of the Title IX claim for failure to state a claim upon which relief may be granted.  Plaintiff's amended complaint alleges that the District, a recipient of federal funds, was deliberately indifferent to the harassment suffered by the plaintiff following the April 1st incident and thus deprived the plaintiff equal access to education. (Am. Compl. at ¶¶ 109,112-115).[3]

Title IX of the Education Amendments of 1972 ("Title IX"), provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.  A plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove that the alleged harassment took place in a location within the control of a recipient of federal funds.  <u>Davis</u>, 526 U.S. at 645, 119 S. Ct. 1661.  Furthermore, a plaintiff must prove the following three elements.  First, an "appropriate person" must have "actual knowledge" of the alleged discrimination or harassment. <u>Id</u>. at 650, 119 S. Ct. 1661.   "An "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination [or harassment]."  <u>Gebser v. Lago Vista Independent School Dist.</u>, 524 U.S. 274, 290, 118 S. Ct. 1989, 1999, 141 L. Ed.2d 277 (1998).  Second, a funding recipient is liable for peer-on-peer harassment if "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," and the deliberate indifference "subjected" the plaintiff

---

[3]The court need not address the defendants' argument that the Title IX claim should be dismissed against "the individually named employees" (<u>see</u> Defs. Mem. at 16) because such claim is alleged only against the defendant District.  <u>See</u> Am. Compl. at ¶¶ 108-121.

to discrimination.  <u>Davis</u>, 526 U.S. at 633, 640-41, 119 S. Ct. 1661.  Third, the discrimination

must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's

access to an educational opportunity or benefit." <u>Id</u>. at 633, 119 S. Ct. 1661.  With these

standards in mind, the court considers the sufficiency of the allegations set forth in the amended

complaint.

The amended complaint alleges that defendant Sussman received actual notice of the

April 1st incident on April 4, 2005, followed by actual notice to both Assistant Principal Dr.

Niedel on April 15, 2005 and Superintendent of School Duffy on April 22, 2005.  (Am. Comp. at

¶¶ 24-25, 28, 31, 40).  Taking these allegations as true as the court must at this stage in the

proceedings, the court finds plausible plaintiff's claim that an "appropriate person" had "actual

knowledge."  Similarly, the amended complaint adequately alleges that the District acted with

deliberate indifference to known acts of harassment and that such indifference subjected the

plaintiff to discrimination.  In this regard, the amended complaint details that there was actual

knowledge of the "wall paper" given the allegation that Sussman viewed the illicit photographs

of the plaintiff coupled with the allegation that defendant Ragon was aware that such images

were on computer screens in computer class at least as of April 11, 2005.  (Am. Compl. at ¶¶ 33,

37-38).  Plaintiff's amended complaint further describes a campaign of harassment by peers

during school hours including calling her a lesbian and other names, whispering about her and

writing derogatory comments about her on the bathroom walls.  (Am. Compl. at  ¶¶ 45-46).

Plaintiff's amended complaint further alleges that the District did not report the April 1st incident

to local authorities as a mandated reporter, that it failed to follow its own acceptable use

computer policy and that it took no action whatsoever regarding the harassment of the plaintiff.

(Am. Compl. at ¶¶ 35, 40, 43, 46).  As a result, plaintiff alleges that she was denied access to an education because she could not endure the unabated harassment at school and the home instruction provided by the District was unsatisfactory in that the tutors were unprepared.  (Am. Compl. at ¶¶ 44-45, 58, 59).  Given these allegations, plaintiff has set forth a plausible Title IX claim only with regard to the harassment at school.  Insofar as plaintiff's Title IX claim is based on the alleged deficient home tutoring, the undersigned recommends that such claim be dismissed without prejudice.  Wholly absent from the amended complaint is any allegation that the plaintiff ever apprised any of the defendants that there was a problem with the tutoring or otherwise complained about the home instruction provided by the District.  Accordingly, the undersigned recommends that the defendants' motion to dismiss the Title IX claim be denied except for that portion arising from the quality of the home tutoring.  The undersigned further recommends that the plaintiff be granted leave to re-plead this prong of her Title IX if warranted following discovery.

## CONCLUSION

For the reasons set forth above, the court recommends dismissal of the claims for punitive damages asserted against the municipal defendants as well as the punitive damages claims against all identified persons sued in their official and individual capacities.  The court further recommends that the plaintiff's Title IX claim relating to the quality of the home tutoring provided by the District be dismissed without prejudice.  Otherwise, the court  recommends that the motion to dismiss be denied.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within fourteen (14) days after service of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. <u>See</u> 28 U.S.C. 636 (b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); <u>Beverly v. Walker</u>, 118 F.3d 900, 902 (2d Cir. 1997); <u>Savoie v. Merchants Bank</u>, 84 F.3d 52, 60 (2d Cir. 1996); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 299 (2d Cir. 1992).


Dated: Central Islip, New York
February 9, 2010                                                    /s/

_____
MICHAEL L. ORENSTEIN
United States Magistrate Judge