UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MEGAN TYRRELL,

                            Plaintiff,

          -against-

SEAFORD UNION FREE SCHOOL DISTRICT,
SEAFORD HIGH SCHOOL, MICHAEL J.
RAGON, in his individual and official capacity,
PAULA SUSSMAN, in her individual and
official capacity, GEORGE DUFFY III,
in his individual and official capacity, BRIAN
CONBOY, in his individual and official capacity,
MASSAPEQUA SCHOOL DISTRICT,

                         Defendants.

-------------------------------------------------------------------X

Docket No.: CV-08-4811
           (SJF)


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**


LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959


*Of Counsel:*   *Marjorie Mesidor, Esq.*

## Table of Contents

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS ................................................................ 2

ARGUMENTS .................................................................................. 2

STANDARD OF REVIEW .............................................................. 2

POINT I        DEFENDANTS' USE OF AFFIDAVITS TO SUPPORT THEIR
               STATEMENT ARE INSUFFICIENT AS A MATTER OF LAW .................... 3

POINT II       PLAINTIFF'S TITLE IX ACTION MUST SURVIVE SUMMARY
               JUDGMENT AS THE HARASSMENT ENDURED BY PLAINTIFF WAS
               SUFFICIENTLY PERVASIVE AND DEFENDANTS HAD ACTUAL
               NOTICE OF IT AND DEFENDANTS WERE DELIBERATELY
               INDIFFERENT TO THE HARASSMENT ................................................ 5

               A.   *Severity of Harassment* ......................................................... 6

               B.   *Notice to Defendants* ............................................................ 9

               C.   *Deliberate Indifference* ....................................................... 11

POINT III      PLAINTIFF'S SECTION 1983 CLAIM MUST SURVIVE SUMMARY
               JUDGMENT AS DEFENDANTS FAILURE TO INFORM PLAINTIFFS
               PARENTS WAS PART OF A PATTERN AND PRACTICE OF
               DISCRIMINATION AND THE INDIVIDUAL DEFENDANTS
               DELIBERATE INDIFFERENCE IS CLEAR ...................................... 13

               A.   *Defendants' Individual Liability Under § 1983* ...................... 15

POINT IV       THE INDIVIDUALLY NAMED DEFENDANTS ARE NOT ENTITLED TO
               QUALIFIED IMMUNITY AS THEIR ACTIONS VIOLATED A CLEARLY
               ESTABLISHED CONSTITUTIONAL RIGHT OF WHICH A
               REASONABLE SCHOOL OFFICIAL WOULD HAVE KNOWN ............. 16

POINT V        PLAINTIFF'S NEGLIGENCE CLAIMS MUST SURVIVE SUMMARY
               JUDGMENT AS DEFENDANTS OWED PLAINTIFF A SPECIAL DUTY
               OF CARE, DEFENDANTS HAVE BREACHED THEIR SPECIAL DUTY
               OF CARE CAUSING PLAINTIFF INJURY AS A RESULT OF THAT
               BREACH ...................................................................................... 19

A.   *Negligent Supervision*..................................................................... 19

B.   *Negligence/Gross Negligence*............................................................ 20

C.   *Negligent Infliction of Emotional Distress*.................................. 22

D.   *Notice of Claim Requirement*........................................................... 24

**CONCLUSION**............................................................................................26

## TABLE OF AUTHORITIES

### Cases

**Page**

Applebaum v. Board of Educ.,

    272 A.D. 875 (1947)....................................................................20

Bruneau ex rel. Schofield v. South Kortright Cent.,

    163 F.3d 749 (2d Cir.1998)..........................................................16

Carnrite v. Granada Hospital Group, Inc.,

    175 F.R.D. 439, 448-449 (W.D.N.Y.1997)............................................3

Cavello v. Sherburne-Earlville Central School District,

    110 A.D.2d 253, 255 (3d Dep't 1985)................................................21

Celotex Corp. v. Catrett,

    477 U.S. 317, 323 (1986)..............................................................2

Coon v. Board of Ed. of the City of New York,

    160 A.D.2d 403 (1st Dep't 1990)....................................................22

David Graubart, Inc. v. Bank Leumi Trust Co.,

    48 N.Y.2d 554 (N.Y. 1979)............................................................3

Davis v. Monroe County Bd. of Education,

    526 U.S. 629 (1999).......................................5, 6, 7, 9, 10,12, 13, 18, 19

Dillard v. City of New York,

    67 A.D.2d 878 (1979)..................................................................27

Dwares v. City of New York,

      985 F.2d 94, 98 (2d Cir.1993)...............................................................15.

Ferrara v Galluchio,

      5 NY2d 16, 21, 152 NE2d 249, 176 NYS2d 996 (1958)......................23

Galasso v. Eisman, Zucker, Klein & Ruttenberg,

      310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004)..............................................3

Gebser v. Lago Vista Indep. Sch. Dist.,

      524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)..............10, 11

Grieshaber v. New Rochelle,

      113 A.D.2d 821 (N.Y. App. Div. 2d Dep't 1985).....................................3

Hardy v. New York City Health & Hosp. Corp.,

      164 F.3d 789 (2d Cir.1999)...................................................................25

Harlow v. Fitzgerald,

      457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)...................17

Hayut v. State Univ. of N.Y.,

      352 F.3d 733, 751 (2d Cir. 2003).........................................................11

Hugelmaier v. Sweden,

      63 N.Y.2d 909 (N.Y. 1984)....................................................................4

Johnson v. Newburgh Enlarged School District,

      239 F.3d 246, 250-251 (2d Cir. 2001).............................................16,18

Johnson v State of New York,

      37 NY2d 378, 381, 334 NE2d 590, 372 NYS2d 638 (1975) ................23

Jundi v. Estate of Rockafeller,

      885 F.2d 1060, 1066 (2d Cir. 1989).........................................................................16

K.M., et al. v. Hyde Park Central Sch. Dist., et al.,

      381 F.Supp.2d 343, 362-363 (S.D.N.Y. 2005)..................................................16, 19

Kelly v.Yale Univ.,

2003 U.S. Dist. LEXIS 4543, No.3:01-CV-1591(JCH) (D.Conn.Mar.26, 2003)........6, 7, 9, 10, 13

Kennedy v McKesson Co.,

      58 NY2d 500, 504, 448 NE2d 1332, 462 NYS2d 421 (1983)..............................23

Knight v. U.S. Fire Ins. Co.,

      804 F. 2d 9, 11 (2d Cir. 1986).............................................................................2

Lawes v. Board of Education of The City of New York,

      16 N.Y.2d 302 (1965)......................................................................................21

Malcom v. City of New York,

      770 N.Y.S.2d 79, 80 (2d Dep't 2003)...............................................................27

Matsushita Etc. Indus. Co. v. Zenith Radio Corp.,

      475 U.S. 574 (1986).........................................................................................2

Monell v. Dep't of Soc. Servs.,

      436 U.S. 658, 694 (U.S. 1978)........................................................................14

Murrell v. School District No. 1, Denver Colorado, et al.,

      186 F.3d 1238, 1250 (10t Cir. 1999)...............................................................15

Paterson v. County of Oneida,

      375 F.3d 206, 219 (2d. Cir. 2004)..................................................................4, 5

Pearson v. Callahan,

    129 S.Ct. 808, 172 L.Ed.2d 565 (2009)....................................................................18

Pratt v. Robinson,

    39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976)............................21, 22

Randell v. United States,

    64 F.3d 101, 109 (2d Cir.1995)...........................................................................3

Ravner v. Autun,

    876 N.Y.S.2d 453 (App. Div. 2009).....................................................................20

Raymond v. Paradise Unified School Dist.,

    218 Cal. App. 2d 1 (1963)..................................................................................20

Reese v. Jefferson Sch. Dist. No. 14J,

    208 F.3d 736, 740 (9th Cir. 2000).......................................................................10

Sanchick v. Board of Educ.,

    11 Misc. 2d 876 (1958) ......................................................................................20

Saucier v. Katz,

    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)..................................17, 18

Sellers v. M.C. Floor Crafters, Inc.,

    842 F.2d 639, 643 (2d Cir. 1988)..........................................................................4

Sheahan v. County of Suffolk,

    109 A.D.2d 832 (N.Y. App. Div. 2d Dep't 1985)....................................................3

Sledge vs. Kooi,

    2007 U.S. Dist. LEXIS 26583 (N.D.N.Y Feb. 12, 2007)....................................3, 5

Soper v. Hoben,

      195 F.3d 845, 855 (6th Cir. 1999).............................................................6

Spence v. Maryland Cas. Co.,

      803 F. Supp. 649, 664 (W.D.N.Y. 1992)................................................4

Teresta v. City of New York,

      304 N.Y. 440, 443 (1952).......................................................................25

Tesoriero v. Syosset Central School District,

      382 F. Supp. 2d 387 (E.D.N.Y. 2005)............................................10, 12

Thompson v. Ange,

      83 A.D.2d 193, 196, 443 N.Y.S.2d 918, 920 (4th Dep't 1981)..............21

U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,

      44 F.3d 1082, 1084 (2d Cir. 1995).........................................................3

Vance v. Spencer Cty. Pub. School Dist.,

      231 F.3d 253, 258-59 (6th Cir. 2000)....................................................6

Wilson v. Layne,

      526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)................17


### Statutes

20 U.S.C. § 1681(a)...........................................................................1,5

N.Y. Gen. Mun. §§ 50-i(1)(a); 50-e(1)(a).....................................25

N.Y. Gen. Mun. § 50-e(6)................................................................27

## **<u>Treatises</u>**

Prosser and Keeton on the Law of Torts, p. 165..........................................................................20

Prosser and Keeton on the Law of Torts, p. 280..........................................................................20

## PRELIMINARY STATEMENT

The Plaintiff, Meghan Tyrrell (hereinafter "TYRRELL"), respectfully submits the within memorandum of law in opposition to the motion for summary judgment, as filed by the DEFENDANTS SEAFORD UNION FREE SCHOOL DISTRICT (hereinafter "DISTRICT"), SEAFORD HIGH SCHOOL (hereinafter "HIGH SCHOOL"), (sometimes collectively referred to as the"District DEFENDANTS")  MICHAEL J. RAGON (hereinafter "RAGON") in his individual and official capacity, PAULA SUSSMAN  (hereinafter "SUSSMAN"), in her individual and official capacity, GEORGE DUFFY III (hereinafter "DUFFY"), in his individual and official capacity, BRIAN CONBOY (hereinafter "CONBOY") , in his individual and official capacity, (sometimes collectively referred to as the"Individual DEFENDANTS") in this matter. As illustrated by case law, documentary evidence and the prior testimony and statements of the parties, there are several material factual issues in dispute, which a rational fact finder could resolve in favor of the Plaintiff.  If resolved in Plaintiff's favor, said facts would further support all of the legal elements necessary to sustain Plaintiffs' Title IX. Educational Amendments of 1972, §901(a), as amended, 20 U.S.C.A. §1681, *et seq.*, 42 U.S.C. §1983 claims against Defendants, as well as Plaintiff's N.Y. state law claims.  The questions raised by Defendants are clearly those which are proper for the jury and only serve to require this Court to unnecessarily apply limited Judicial resources.

At this time, Plaintiff respectfully withdraws its state law claim of battery brought against Defendants John and Jane Doe "1-10",  as a litigation of this claim would provide no further relief and/or options for Plaintiff. The same is withdrawn in an attempt to aid in the preservation of Judicial resources.

## STATEMENT OF FACTS

For the sake of brevity, the Plaintiff respectfully refers this Court to Plaintiff's Opposition to Defendants' Statement of Undisputed Facts, Plaintiff's Counter Statement of Facts, Plaintiff's exhibits, and Plaintiff's Amended Complaint in this action.

A review of all Defendants' Answer, Affirmative Defenses, Responses to Document Production and Interrogatories, Defendants's counsels' Affidavit, Defendants' Rule 56.1 Statements, and Motions for Summary Judgment all reveal a number of material issues of fact in this case.

Defendants in their competing papers demonstrate that clear issues of facts exist which should be left to the trier of fact to determine. Accordingly, Defendants' motion should be disregarded by the court while determining the factual issues raised by Plaintiff's Opposition to this motion for summary judgment.

## ARGUMENTS

## STANDARD OF REVIEW

It is well-established that in determining whether summary judgment is appropriate, the moving party bears the burden of demonstrating the absence of any genuine issues of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   With respect to any factual issues that arise, a Court must resolve all factual ambiguities and draw all reasonable inferences in favor of the nonmoving party. Matsushita Etc. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  Quite notably, the nonmoving party need not prove their case dispositively at the summary judgment stage, in order to defeat such a motion.   Rather, the non-movant need only demonstrate that there are material factual issues in existence, such that a *reasonable* fact finder *could* resolve such issues in favor of the nonmoving party. Knight v. U.S. Fire Ins. Co., 804 F. 2d 9, 11 (2d Cir. 1986) [Italics added].

2

## POINT I

## DEFENDANTS' USE OF AFFIDAVITS TO SUPPORT THEIR STATEMENT ARE INSUFFICIENT AS A MATTER OF LAW

It is clear that unsubstantiated and conclusory allegations of fact by an attorney lacking personal knowledge are patently insufficient to defeat or support a motion for summary judgment; hence, the denial of Defendants' Motion for Summary Judgement is proper Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004); see, David Graubart, Inc. v. Bank Leumi Trust Co., 48 N.Y.2d 554 (N.Y. 1979); Grieshaber v. New Rochelle, 113 A.D.2d 821 (N.Y. App. Div. 2d Dep't 1985), appeal dismissed 66 NY2d 1035; Sheahan v. County of Suffolk, 109 A.D.2d 832 (N.Y. App. Div. 2d Dep't 1985)). To be sufficient to create a factual issue, an affidavit must, among other things, be based "on personal knowledge." Sledge v. Kooi, 2007 U.S. Dist. LEXIS 26583 (N.D.N.Y Feb. 12, 2007) citing Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995), cert. denied sub nom, Ferrante v. U.S., 516 U.S. 806, 116 S. Ct. 50, 133 L. Ed. 2d 15 (1995). An attorney's affidavit is incompetent to raise or deny the existence any genuine issue of material fact. See Randell v. United States, 64 F.3d 101, 109 (2d Cir.1995) (attorney's affidavit that did not purport to be based on personal knowledge was inadequate to defeat a motion for summary judgment); Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 448-449 (W.D.N.Y.1997) (attorney's affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party).

Conclusory statements contained in Defendants' attorney's affidavit, made without personal knowledge of the facts, is without probative value and, hence, insufficient to support the motion. Hugelmaier v. Sweden, 63 N.Y.2d 909 (N.Y. 1984)

An affidavit is not based on personal knowledge if, for example, it is based on mere

3

"information and belief" or hearsay. *See* Patterson, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge or upon information and belief . . . . Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); Spence v. Maryland Cas. Co., 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F. 2d 1147 (2d Cir. 1993).

Defendants have not established that Defendants' counsel has personal knowledge as to the specific facts in paragraphs 10-60 in Defendants' counsel's Affidavit. None of the paragraphs cited are based on personal knowledge. Rather, Defendants' counsel recount their version of the facts based on secondhand information, information and belief and hearsay. (*See* Paterson v. County of Oneida, 375 F.3d 206, 219 (2d. Cir. 2004) (finding that Rule 56(e) requires that affidavits be made on personal knowledge and is not satisfied by assertions made "on information and belief" and that affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to support a genuine issue at trial) Furthermore, the assertions in these paragraphs of Defendants' counsel's affidavit lack any supporting evidence, as the affidavit's citations to any exhibits other than depositions are inadmissable evidence under Rule 56 (e) which requires that "if a paper or a part of paper is referred to in an affidavit, **a sworn or certified copy** must be attached to or served with the affidavit." No documents other than the depositions attached to Defendants' motions are **sworn to or**

4

**certified**; and as such any unsupported facts alleged should be disregarded. All of which, as a matter

of law, make the affidavit insufficient to support the purported factual issue. <u>Sledge vs. Kooi</u>, 2007 U.S.

Dist. LEXIS 26583 (N.D.N.Y Feb. 12, 2007) *citing* <u>Paterson v. County of Oneida</u>, 375 F.3d at 219.

**POINT II**

**PLAINTIFF'S TITLE IX ACTION MUST SURVIVE SUMMARY JUDGMENT
AS THE HARASSMENT ENDURED BY PLAINTIFF WAS SUFFICIENTLY PERVASIVE
AND DEFENDANTS HAD ACTUAL NOTICE OF IT AND
DEFENDANTS WERE DELIBERATELY INDIFFERENT TO THE HARASSMENT**

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, provides that "[n]o

person in the United States shall, on the basis of sex, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any education program or activity receiving Federal

financial assistance." 20 U.S.C. § 1681(a). Recipients of federal funding, like District Defendant

Seaford School District, may be liable for damages under Title IX for student-on-student sexual

harassment. See <u>Davis v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 653, 119 S. Ct. 1661, 143 L. Ed. 2d

839 (1999). There is no dispute that defendant receives federal funding and is therefore liable for Title

IX student-on-student sexual harassment. The issue before the Court is whether plaintiff has proffered

sufficient evidence on each element of a Title IX claim to survive summary judgment.

In <u>Davis</u>, the Supreme Court established that a Title IX claim based on student-on-student

harassment is supported when the plaintiff demonstrates the following elements: 1) the sexual

harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the

plaintiff of access to the educational opportunities or benefits provided by the school; 2) the funding

recipient had actual knowledge of the sexual harassment; and 3) the funding recipient was deliberately

indifferent to the harassment. *See* <u>Vance v. Spencer Cty. Pub. School Dist.</u>, 231 F.3d 253, 258-59 (6th

Cir. 2000) (citing <u>Davis</u>, 526 U.S. at 633); *see also* <u>Kelly v. Yale Univ.</u>, 2003 U.S. Dist. LEXIS 4543,

No. 3:01-CV-1591 (JCH), 2003 WL 1563424, at *1, *4 (D. Conn. Mar. 26, 2003). Title IX liability for

5

student-on-student harassment is limited "to circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645.

A. *Severity of Harassment*

There is no dispute that student-on-student sexual assault can constitute sexual harassment for Title IX purposes. *See* Soper v. Hoben, 195 F.3d 845, 855 (6th Cir. 1999) (victim's allegations of rape, sexual abuse and harassment qualify as severe, pervasive, and objectively offensive sexual harassment); Kelly, 2003 U.S. Dist. LEXIS 4543, 2003 WL 1563424, at *3 (plaintiff's allegations of rape constitute severe and objectively offensive sexual harassment). Here, even though the Defendants could not be liable for the sexual assault of Meghan Tyrrell, it could still be liable for deliberate indifference to known post-assault harassment "in a context subject to the school district's control," if the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive [plaintiff] of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 645, 650; Kelly, 2003 U.S. Dist. LEXIS 4543, 2003 WL 1563424, at *3.

The evidence shows that Meghan was being bullied aggressively. She was pushed down in hallways, yelled at, cursed at, told the get out of the school, she was called "slutty", "lesbian" and a "dyke". (Defendants' Exhibit F, M. Tyrrell Tr. 159:10-160:11; Defendants Exhibit M, Lombardo Tr. 39:7-22) Meghan was seen crying in the hallways being gossiped about and laughed at in the classroom. (Defendants Exhibit M, Lombardo Tr. 39:7-22) Plaintiff was written about on Seaford bathroom walls calling her a "lesbian" and saying the she had "herpes", Defendants were made aware of this harassment. (Defendants' Exhibit F, M. Tyrrell Tr. 129:2-11, 120:11-121:5) For the reasons that follow, this evidence could support a reasonable jury conclusion that these circumstances rose to the level of "severe, pervasive, and objectively offensive" under Davis.

In Kelly, the plaintiff, a sexual assault victim, continued to attend Yale Divinity School with her

6

attacker. Although she had no interactions with, and was not harassed by, her attacker after the assault, his "presence on campus and the accompanying risk that she might encounter him created a hostile environment that effectively deprived her of the educational opportunities or benefits provided by the school." Kelly, 2003 U.S. Dist. LEXIS 4543, 2003 WL 1563424, at *3. The court held that a reasonable jury could find that "following the assault, [the attacker's] presence on campus was harassing because it exposed her to the possibility of an encounter with him." Id. In similar fashion, Meghan Tyrrell was constantly coming into contact with Seaford students who were either present the night of incident or had seen the photos online.  In fact, knowledge of these photographs was so pervasive that news of the photographs traveled into the remainder of the District to Meghan's neighbors and employer. (Defendants Exh. F., M. Tyrrell Tr. 160:20-161:5, 208:23-209:20; Defendants Exh G, L. Tyrrell Tr. 124:10- 125:7) Meghan Tyrrell's affidavit states that Seaford students yelled at her in the hallways telling her to "get the fuck out of here", calling her "slutty", a "carpet muncher", "lesbo", they pointed and laughed a her,  many times during the school year, and that the experience of seeing them was very upsetting and made the school year very hard. (Defendants' Exhibit F, M. Tyrrell Tr. 129:2-11, 120:11-121:5) Thus, in addition to the post-assault harassment by Seaford students, Plaintiff attended school with witnesses to the incident who ridiculed and laughed at her without remorse; believing she got exactly what she deserved.(Defendants Exh. M, Lombardo 35:4-36:3, 39:7-22, 40:9-20, 66:18-67:3) These events when viewed together could be found to constitute pervasive, severe, and objectively offensive harassment.

In addition to the evidence that Meghan Tyrrell was harassed in school, there is also the evidence that Seaford students harassed her off of school grounds. Still residing in Seaford, Plaintiff was often harassed and pointed at in the community by students and parents who knew of the incident. Information regarding the April 1, 2005 incident, and the pictures, even reached her employer at Ralph's Italian Ices. (Defendants Exh. F., M. Tyrrell Tr. 160:20-161:5, 208:23-209:20; Defendants Exh G, L.

Tyrrell Tr. 124:10- 125:7) Meghan Tyrrell stated that harassment by Seaford School District students continued even after, she no longer physically attended school. (Defendants Exh. F., M. Tyrrell Tr. 160:21-161:5) Meghan indicated that it occurred more than once, although she cannot name every instance, Plaintiff does recount one incident when a Seaford student by the name Anthony Richards, told several of her neighbors about the pictures at a neighborhood block party. Gathering several other students, neighbors and parents, the group began taunting Meghan calling her a "slut", an "internet porn star" and an "international porn star". (Defendants Exh. F., M. Tyrrell Tr. 160:20-161:5, 208:23 - 209:20; Defendants Exh. G., L. Tyrrell Tr. 328:8 - 332:13) When Meghan's mother, Mrs. Tyrrell defended her daughter to Anthony Richards' mother, indicating that Meghan was a victim, Mrs. Richards replied, "that's bullshit". (Defendants Exh. G., L. Tyrrell Tr. 328:8-332:13) Although, the student-on-student harassment off school grounds, is not actionable because Davis mandates that the Defendants cannot be liable for any deliberate indifference to harassment in a context over which the Defendants do not have control; as considered below, this evidence of "proxy-harassment" does bolster Plaintiff's claim concerning the severity and offensiveness of having to go to school with students who had witnessed the April 1, 2005 incident and/or viewed the pictures of Meghan Tyrrell.

Plaintiff must be able to demonstrate that the circumstances were sufficiently pervasive, severe, and objectively offensive to "effectively deprive[] her of 'the educational opportunities or benefits provided by the school.'" Kelly, 2003 U.S. Dist. LEXIS 4543, 2003 WL 1563424, at *1, *3 (quoting Davis, 526 U.S. at 650). Plaintiff claims that as a result of the ongoing harassment, she was home schooled for the remainder of 2004-2005 school year and again in the 2005-2006 school year and subsequently transferred out of the Seaford school system after eleventh grade.(Defendants Exh G, L. Tyrrell Tr. 353:1-354:6). Mrs. Tyrrell testified that she took Meghan out of school because Defendants were "not doing a good job protecting her" . (Defendants Exh. G, L. Tyrrell, Tr. 240:16-241:4)

Despite Defendants' argument to the contrary, there is minimally sufficient evidence from which

8

a reasonable jury could conclude that going to the same school where Plaintiff was continually being harassed by students and witnesses of the April 1, 2005 incident and the pictures played a role in the Tyrrell's decision to home school Plaintiff and subsequently transfer her out of Seaford High School, thus depriving her of its educational opportunities or benefits. As noted above, the proxy-harassment by Plaintiff's neighbors and Seaford students off school grounds, while not actionable, supports plaintiff's claim that the harassment, bullying and name calling endured by the witnesses to the April 1, 2005 incident and those who had viewed and heard about the pictures, would be sufficiently distressing or threatening such that the fact of their continued mutual presence in the same building and concomitant possibility of potential interaction impacted her decision to  be home schooled and eventually transferred.

Thus, plaintiff has presented genuine issues of material fact with respect to the first element of the Davis test.

B. *Notice to Defendants*

While the Defendant District  may be liable for the post-assault school situation, there is  no dispute that the Defendant District did not receive notice of Meghan Tyrrell's sexual assault until after it took place and therefore, under Davis, the District cannot be held liable for the sexual assault itself. See Davis, 526 U.S. at 642, 649 (actual and adequate notice of harassment required before liability is triggered); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (defendant school board not liable for harassment that occurred before plaintiff reported conduct to the school); Kelly, 2003 U.S. Dist. LEXIS 4543, 2003 WL 1563424, at *1, *3 (defendant University not liable for an off-campus sexual assault that occurred before plaintiff reported any harassment).

It is undisputed that Defendant District received notice of the sexual assault and that Meghan Tyrrell was a danger to herself, on or about April 7, 2005 when St. Anthony's High School contacted Defendant Sussman to advise her that a St. Anthony's student, Matthew Burnhauser had reported the

assault and Meghan's fragile state to them.

"Although the actual knowledge standard has been applied repeatedly by courts since Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998), its contours have yet to be fully defined." Tesoriero v. Syosset Central School District, 382 F. Supp. 2d 387, 397 (E.D.N.Y. 2005) (internal quotations omitted). "Accordingly, it is difficult to define what kind of notice is sufficient." Id. (internal quotations omitted). Defendants argue that actual notice as set forth in Davis and Gebser requires an actual complaint of sexual harassment by the victim to a school administrator. Defendants argue that Title IX liability does not accrue simply because Defendant District should have known of the sexual harassment due to its notoriety in the community. "But most courts agree that '[o]n the other hand, the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.'" Tesoriero, 382 F. Supp. 2d at 397 (quoting Doe v. Sch. Admin. Dist. No. 19, 66 F. Supp. 2d 57, 63 (D. Me. 1999)).

The record on this motion demonstrates a triable issue of fact as to when the Board received actual notice of the sexual harassment, as the starting point for measuring the adequacy of its response. The nature and pervasiveness of harassment of Meghan Tyrrell may be evidence from which actual notice could be inferred. Meghan was seen several times crying in the hallway, she was often shouted at and pushed around while walking in the hallways. Meghan was written about on a bathroom wall that was used by students, teachers and administration. In addition, Seaford community members were aware of the incident and the pictures as well; thus the incident and the neighborhood block party, Plaintiff's employer finding out and Mrs. Tyrrell's sister Sally being made aware of it by a Seaford District student. The circumstances of Defendant Sussman's knowledge of harassment and subsequent writings on the bathroom wall regarding Plaintiff being a "lesbian", that she had "herpes"; and Defendant Ragon's witnessing Meghan Tyrrell crying in the hallways could also provide a basis for a reasonable jury to conclude that the Defendant District had actual knowledge of the sexual harassment.

10

Thus, Plaintiff has proffered sufficient evidence from which a jury could conclude that the District received actual notice of the sexual harassment before Meghan was taken out of school, yet failed to take any disciplinary action against the students nor inform Meghan's parents of the harassment and pornographic pictures that had circulated the internet of their minor daughter.

## C. *Deliberate Indifference*

There being evidence in the record from which it could be found that defendant had actual notice of the sexual harassment at some point, the central issue becomes whether Defendants' response, or lack thereof, could be found to amount to deliberate indifference. Title IX is violated when a federal funding recipient's response to known harassment amounts to "deliberate indifference to discrimination." *See* Hayut v. State Univ. of N.Y., 352 F.3d 733, 751 (2d Cir. 2003) (quoting Gebser, 524 U.S. at 290). "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, and when remedial action only follows after a lengthy and unjustified delay." Id. (internal citations and quotations omitted). "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Davis, 526 U.S. at 645. "Deliberate indifference is more than a mere reasonableness standard that transforms every school disciplinary decision into a jury question." Tesoriero, 382 F. Supp. 2d at 398 (internal quotations omitted). However, deliberate indifference will often be a fact-based question, for which bright line rules are ill-suited. *See id.*

In this case, Plaintiff proffers sufficient evidence to permit a finding that the District's response was unreasonably delayed and inadequate so as to constitute deliberate indifference by making Meghan Tyrrell vulnerable to harassment.

Evidence that: (1) the District took no disciplinary action whatsoever against any of the students that were harassing Plaintiff and (2) the District failed to fully inquire regarding which of their students who had information about the incident and pictures, could both be components of a jury finding of

11

deliberate indifference.

Additionally, the action the District ultimately took also could be questioned as inadequate: notifying Massapequa High School regarding the pictures, did little to nothing to curtail the severity of harassment that Plaintiff endured at Seaford High School. Furthermore, Defendants did not request that the pictures be taken down off of the site, they did not inquire of Massapequa High School as to the involvement of any other Seaford students in the incident or the taking of the pictures. Most disturbingly, after Defendant Sussman viewed the photographs and saw that they were pornographic in nature, she failed to apprise Plaintiff's parents or the authorities that a possible crime had been committed. Defendants inactions, allowing Plaintiff's harassers to remain in school exposing Meghan Tyrrell to the potential for emotional encounters and harassment, could be found to constitute deliberate indifference. In this context Plaintiff is aware of the fact that Plaintiff's harassers were not actually suspended or expelled is not necessarily indicative of defendant's inaction or deliberate indifference. "A victim of peer harassment does not have the right to any particular remedial demand, immediate expulsion of her alleged harasser, or a remedy that would expose the school to a constitutional or statutory claim on the part of the accused, Title IX requires that the school make an effort to remedy known peer harassment in a manner that is not 'clearly unreasonable.'" Kelly, 2003 U.S. Dist. LEXIS 4543, 2003 WL 1563424, at *4 (citing Davis 526 U.S. at 648-49). However, the Defendants failure to do anything regarding the harassment that was reported despite the effects of the harassment on Plaintiff that they witnessed can be viewed as deliberate indifference. Even assuming arguendo, Defendants argument that Plaintiff did not report every incident of harassment, Meghan's failure to report every instance may have been reasonable given violent nature with which Plaintiff was being treated and Defendant Sussmans' nonchalant response to Plaintiff's recounting of the incident, the pictures and the harassment she had endured up to that point.

A jury could also conclude that any reluctance to provide additional information regarding her

12

harassers, particularly when passed complaints had gone unaddressed, was justifiable.

Further, even apart from the possibility of disciplining her harassers, Defendants made no other efforts to reduce Meghan Tyrrell's vulnerability to traumatic interactions with her harassers or to otherwise reach out to her to offer protection. Indeed, given the circumstances -- including the fact of the assault, Meghan Tyrrell's youth, and the continued harassment on and off school campus -- a jury could conclude that the Defendants should have known, even absent a specific complaint from Meghan Tyrrell or her parents, that this was a particularly risky situation necessitating its attention.

Thus, there is evidence from which a jury could reasonably conclude that the Defendants' conduct following its notice of Meghan Tyrrell's sexual assault and harassment amounted to deliberate indifference.

## **POINT III**

### **PLAINTIFF'S SECTION 1983 CLAIM MUST SURVIVE SUMMARY JUDGMENT AS DEFENDANTS FAILURE TO INFORM PLAINTIFFS PARENTS WAS PART OF A PATTERN AND PRACTICE OF DISCRIMINATION AND THE INDIVIDUAL DEFENDANTS DELIBERATE INDIFFERENCE IS CLEAR**

A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (U.S. 1978)

Defendant District had a policy regarding student confidentiality based on regulations articulated by th Office of substance Abuse Albany, that is followed by Seaford School District, that extended to communications that students had with counselors. (Defendants' Exhibit H, Sussman Tr. 33:2-14; 34:2-35:13, 118:16- 119:14) This policy regarding that student confidentiality could not be breached absent

a communication that involves abuse, a criminal act or information that a student was going to harm themselves. (Defendants' Exhibit H, Sussman Tr.118:16- 119:14)

Defendant Sussman was apprised that Plaintiff was sexually assaulted, that pictures were taken during the incident and that she was a threat to herself by Matthew Burnhauser and his St. Anthony's guidance counselor on April 7, 2005. (FKB Decl. Exh. G, Burnhauser Tr. 40:8-16, 40:20- 41:3, 69:19-25, 70:11-71:4) Defendant Sussman spoke to Plaintiff, and after meeting Plaintiff for the first time and speaking to Plaintiff for a mere fifteen minutes, ascertained that Plaintiff was fine. (Defendants' Exhibit F, M. Tyrrell Tr. 126:25- 127: 5, 127:22-128:4, 129:22-25, 156:21-157:4, 158:3-9; Exhibit H, Sussman Tr. 55:1-24) Plaintiff advised Defendant Sussman that she was not fine because she was being harassed and was still in school with harassers. (Defendants' Exhibit F, M. Tyrrell Tr. 127:22-128:4, 129:22-25, 156:21-157:4, 158:3-9) Plaintiff Meghan Tyrrell requested that Defendant Sussman not tell her parents about their conversation.

Defendant Sussman's assessment that Plaintiff was "fine" was in spite of her alleged concern about Plaintiff's reaction to the incident and the discovery that pictures were circulating on the internet. (Defendants' Exh. I, Ragon Tr. 114:18-115:16)

Later that same day, Defendant Sussman saw the pornographic pictures of minor, Meghan Tyrrell on public website.(Defendants' Exhibit H, Sussman Tr. 81:4-18, 86:9- 94:11; FKB Decl. Exh. E, Two Photos marked at Defendant Sussman's Deposition as Exh. 4 and 9) Defendant Sussman advised Defendant Ragon of her findings and her decision not to tell Meghan's parents, based on Meghan's request. (Defendants' Exhibit H, Sussman Tr. 83:9-12) Defendant Ragon informed Defendants Duffy and Conboy of their decision not to tell Meghan parents, based on her request. (Defendants' Exh. K, Duffy Tr. 49:9-25; Defendants' Exh. I, Ragon Tr. 54:13-17)

As a result of Defendants decision not to inform Plaintiff's parents, based on student confidentiality, despite notification that Plaintiff was a threat to herself and the pornographic pictures

14

were circulating of Plaintiff on the internet, Plaintiff suffered for two weeks being harassed, socially estranged and physically pushed around by Seaford students.

A.   ***Defendants' Individual Liability Under § 1983***

"[I]n order to state a claim under § 1983, a plaintiff must prove (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993).   Government official or supervisory employee may be held liable under §1983 upon a showing of deliberate indifference to known sexual harassment. Murrell v. School District No. 1, Denver Colorado, et al., 186 F.3d 1238, 1250, 137 Ed.Law Rep. 474 (10t Cir. 1999).   Liability under §1983 must be predicated upon a deliberate deprivation of constitutional rights by defendant, not upon mere negligence.   Personal involvement of a supervisory official, required for award of damages under §1983, may be established by evidence that the official, after being informed of a violation through report or appeal, failed to remedy the wrong or the official exhibited deliberate indifference to rights of others by failing to act on information indicating that unconstitutional acts were occurring. Johnson, 239 F.3d at 255-256; see also, Jundi v. Estate of Rockafeller, 885 F.2d 1060, 1066 (2d Cir. 1989).

As previously indicated, due to Defendants inaction and deliberate indifference to the April 1, 2005 incident and harassment Plaintiff endured thereafter, Plaintiff was forced into home schooling and eventual transfer out of the school district.   Specifically, pursuant to §1983, Plaintiff was denied equal access to a public education. (FKB Decl. Exh. B, Letter dated, April 26, 2005 to Defendant Ragon from Mr. and Mrs. Tyrrell; Defendants Exh. G, L. Tyrrell, Tr. 240:16-241:4)   Title IX does not bar Plaintiff's § 1983 claim for violations of the Equal Protection Clause of the Fourteenth Amendment.   This constitutional right provides an independent basis for maintaining Plaintiff's § 1983 claim. Bruneau ex rel. Schofield v. South Kortright Cent., 163 F.3d 749 (2d Cir.1998); see also, K.M., et al. v. Hyde Park,

15

381 F.Supp.2d at 363 (court upholds Title IX claim as well as §1983 claim against individual defendant.)

Defendants argue that Plaintiff never identified the names of any of the harassers to the District or other Defendants. Given Plaintiff's general reluctance to speak to Defendant Sussman in the first place and her overall dissatisfaction with Defendants management of information that Plaintiff did provide them, it is not unreasonable that Plaintiff believed that her continued complaints would produce no results. Furthermore, Defendants do not explain their failure to inquire as to the identity of those that were harassing plaintiff. The Plaintiff informed the Defendants of the harassment and the Defendants in turn assured the Plaintiff and her mother that an investigation would be conducted. (Defendants Exhibit G, L. Tyrrell Tr. 368:2-12) The harassment became so severe and pervasive that the mother had to remove her daughter from attending the Defendant District. (FKB Decl. Exh. B, Letter dated, April 26, 2005 to Defendant Ragon from Mr. and Mrs. Tyrrell; Defendants Exh. G, L. Tyrrell, Tr. 240:16-241:4) It is all of these incidents taken as a whole that demonstrates the Defendants repeated disregard for the known harassment that was occurring, not to mention their outright failure to take any remedial measures regarding the April 1st incident.

Plaintiff substantiated her allegations that Defendants actions rose to the level of deliberate indifference thereby sustaining her claim pursuant to §1983. Clearly, as persons in control of both the students and the environment, Defendants' chose to take no action and encourage the hostile and abusive environment to fester, thus allowing Plaintiff's rights to be violated.

**POINT IV**

**THE INDIVIDUALLY NAMED DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF WHICH A REASONABLE SCHOOL OFFICIAL WOULD HAVE KNOWN**

"[G]overnment officials performing discretionary functions generally are granted a qualified

immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201, 121 S.Ct. 2151. "[T]he next, sequential step is to ask whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151. The United States Supreme Court recently receded from Saucier, however, in Pearson, holding that when "resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by plaintiff make out a violation of a constitutional right. Pearson v. Callahan, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Therefore, at the Court's own discretion, it can first determine whether a constitutional right was clearly established at the time of defendant's alleged misconduct. In determining whether a constitutional right is "clearly established," as required for plaintiff to defeat a government official's claim of qualified immunity in civil rights actions, the relevant dispositive inquire is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250-251 (2d Cir. 2001).

The United States Supreme Court, and as such the Second Circuit, recognize a clearly established right pursuant to Title IX. Davis v. Monroe County Bd. of Education, 526 U.S. 629, 119 S.Ct. 1661 (1999). Specifically, in Davis, the Supreme Court held that in some circumstances, a school

district may be held liable for student-to-student harassment as long as it had the effect of denying educational opportunities. Id. at 1675.

After the tragic events that took place on April 1, 2005, Plaintiff alleges that the district, and its officials, failed to take any remedial action after the incident. Each individual Defendant possessed the requisite knowledge and information regarding the incident such that remedial measures could have been taken, but were not. (Defendants' Exhibit F, M. Tyrrell Tr. 127:22-128:4, 129:22-25, 156:21-157:4, 158:3-9; Exhibit H, Sussman Tr. 55:1-24; Defendants Exhibit M, Lombardo Tr. 39:7-22, 43:24-45:10) In addition to failing to take remedial measures regarding the incident, each individual Defendant, permitted further harassment on school grounds during school hours. As discussed, *supra*, the individual Defendants were deliberately indifferent to the derogatory writing on the bathroom walls and the ridicule Plaintiff had to endure after the incident at school. (Defendants' Exhibit F, M. Tyrrell Tr. 127:22-128:4, 129:22-25, 156:21-157:4, 158:3-9; Exhibit H, Sussman Tr. 55:1-24)

At the time these events occurred, Title IX protection against peer sexual harassment was a clearly established right. See Davis v. Monroe County Bd. of Education, 526 U.S. 629 (1999). Further, a second clearly established right is the Plaintiff's right to equal access to a public education, without fear of retaliation or abuse. Any reasonable school district official would have known that failing to take any remedial measures, such as disciplining students or contacting legal authorities, would be a violation of the Plaintiff's clearly established rights pursuant to §1983 and Title IX. Where a school administrator acts deliberately indifferent towards known harassment, defendants are not entitled to qualified immunity. K.M., et al. v. Hyde Park Central School District, et al., 381 F.Supp.2d 343, 362-363 (S.D.N.Y. 2005).

As discussed, supra, at least two of the individual Defendants had direct knowledge of the harassment that Plaintiff endured, Defendants Sussman and Ragon. However, Defendants Conboy and Duffy, made no inquiry of either the well-being or mental state of Plaintiff. Leaving Defendants

18

Sussman and Ragon to manage the situation, Defendants Conboy and Duffy were simply informed of the steps taken and end results. Accordingly, Defendants' motion for summary judgment the individual Defendants based on qualified immunity should be denied.

**POINT V**

**PLAINTIFF'S NEGLIGENCE CLAIMS MUST SURVIVE SUMMARY JUDGMENT AS DEFENDANTS OWED PLAINTIFF A SPECIAL DUTY OF CARE, DEFENDANTS HAVE BREACHED THEIR SPECIAL DUTY OF CARE CAUSING PLAINTIFF INJURY AS A RESULT OF THAT BREACH**

Plaintiff alleges three state negligence claims under theories of: (1) negligent supervision, (2) negligence/gross negligence and (3) negligent infliction of emotional distress. Plaintiff has proffered sufficient evidence to withstand Defendants' motion for summary judgement.

A.   ***Negligent Supervision***

An educational institution is liable for negligent supervision only if there is a reasonably close causal connection between the conduct or negligence and the resulting injury, that is, proximate cause. Prosser and Keeton on the Law of Torts, p. 165.  Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risks. Prosser and Keeton on the Law of Torts, p. 280. An unreasonable risk necessarily involves only foreseeable risks. Raymond v. Paradise Unified School Dist., 218 Cal. App. 2d 1, 31 Cal. Rptr. 847 (1963)  Educational institutions are not insurers of student safety. Sanchick v. Board of Educ., 11 Misc. 2d 876, 172 N.Y.S.2d 748 (1958) The duty of supervision extends only to matters which are reasonably foreseeable. Applebaum v. Board of Educ., 272 A.D. 875, 71 N.Y.S.2d 140 , *aff'd*, 297 N.Y. 762, 77 N.E.2d 785 (1947) Accordingly, where an educational institution could not reasonably foresee an injury or its supervision is reasonable in light of what it could anticipate, there is no negligence and no liability. Ravner v. Autun, 876 N.Y.S.2d 453 (App. Div. 2009).

19

In the case at bar, Defendants were aware that Plaintiff was being harassed at Seaford High School. Defendants took no action to address, prevent or otherwise protect Plaintiff from additional harassment. Defendant Sussman admittedly had knowledge that the incident was sexual in nature, between two young females, that pictures were circulating around the internet and that same morning that she spoke to Plaintiff that she had been called a "lesbian". This information was shared with Defendants Ragon, Conboy and Duffy. Furthermore, Plaintiff testified that she advised Defendants that there were writings on the bathroom wall regarding her being "lesbian" and that she had "herpes". As such a jury could reasonably determine that it was foreseeable, especially to that of a seasoned social worker and adminstrators,  that Plaintiff would endure the kind of harassment at the hands of her peers that she did- name calling, being laughed at, pushed around, etc.

B.    ***Negligence/Gross Negligence***

For schools and school districts, the standard of care required to be exercised towards students is "the degree of supervision which a parent of ordinary prudence would undertake in comparable circumstances." Thompson v. Ange, 83 A.D.2d 193, 196, 443 N.Y.S.2d 918, 920 (4th Dep't 1981). The Thompson court described the duty owed by a school to its students as "the same standard of care generally applicable to the State when it has custody of a mental defective or a parolee, or to a county when it has charge of a delinquent child." *See also* Pratt v. Robinson, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976); Lawes v. Board of Education of The City of New York, 16 N.Y.2d 302, 266 N.Y.S.2d 364, 213 N.E.2d 667 (1965). Schools have a duty to supervise students and protect them from risks of harm from each other, and from third persons, provided the school has physical custody of and control over the students. Thompson, 443 N.Y.S.2d 918. *See also* Cavello v. Sherburne-Earlville Central School District, 110 A.D.2d 253, 255, 494 N.Y.S.2d 466, 468 (3d Dep't 1985), app. den., 67 N.Y.2d 601, 499 N.Y.S.2d 1027, 490 N.E.2d 555 (1986)(school "is obliged to adequately supervise the activities of students within its charge. And while a school is not an insurer

20

of student safety, it will be held liable in damages for a foreseeable injury proximately related to the absence of supervision").

The relationship between the school and the student is a special relationship during the period of custody and control. Pratt v. Robinson, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976). The Court of Appeals has explained, as follows, the rationale for imposing this supervision duty during the period of custody:

> by taking custody of the child, the school has deprived [the child] of the protection of his parents or guardian. Therefore, the actor who takes custody of … a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him. The school's duty is thus coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to resume control over the child's protection, the school's custodial duty also ceases.

Pratt v. Robinson, 39 N.Y.2d 554, 560, 384 N.Y.S.2d 749, 752–753, 349 N.E.2d 849 (1976)

The supervision duty imposed upon schools is "unqualified and mandatory." Coon v. Board of Ed. of the City of New York, 160 A.D.2d 403, 554 N.Y.S.2d 110 (1st Dep't 1990). Indeed, there is no requirement that the school be on notice of risk of danger to its students in order to require general supervision, Id. although duty to provide more specific supervision will require notice of a risk, since the level of care required depends on the circumstances and the risks to be perceived.

Here, Defendants are in breach of even their basic duty to provide general supervision of students. Plaintiff was openly harassed, pushed in hallways, yelled at, called a "lesbian", "carpet muncher", "dyke", "a slut", told to "get the fuck out here" in classrooms and hallways. Defendants' Exhibit F, M. Tyrrell Tr. 159:10-160:11; Defendants Exhibit M, Lombardo Tr. 39:7-22) Meghan was seen crying in the hallways by both students and at least one administrator, she was being gossiped about and laughed in the classroom.  (Defendants Exhibit M, Lombardo Tr. 39:7-22, 43:24- 45:10) Plaintiff was written about on Seaford bathroom walls calling her a "lesbian" and saying the she had

21

"herpes", Defendants were made aware of this harassment. (Defendants' Exhibit F, M. Tyrrell Tr. 129:2-11, 120:11-121:5) Yet Defendants did nothing.

Defendants not only failed to address the harassment, but failed to inform Plaintiff's parents of the harassment at school, the nature of photographs posted on the internet of Plaintiff and that Plaintiff was a harm to herself. Further depriving Plaintiff an adolescent of any protection, guidance, comfort or safety. Defendants inaction caused Plaintiff to walk around in a hostile learning environment, upset, crying, embarrassed and in disbelief. Plaintiff felt violated, embarrassed and betrayed and taken advantage of. (Defendants' Exhibit F, M. Tyrrell Tr. 127:22-128:4, 129:22-25, 156:21-157:4, 158:3-9)

C.     ***Negligent Infliction of Emotional Distress***

It is well-settled that a person "to whom a duty of care is owed . . . may recover for harm sustained solely as a result of an initial, negligently-caused psychological trauma, but with ensuing psychic harm with residual physical manifestations" Johnson v State of New York, 37 NY2d 378, 381, 334 NE2d 590, 372 NYS2d 638 (1975) (citations omitted). A breach of the duty of care "resulting directly in emotional harm is compensable even though no physical injury occurred" Kennedy v McKesson Co., 58 NY2d 500, 504, 448 NE2d 1332, 462 NYS2d 421 (1983) when the mental injury is "a direct, rather than a consequential, result of the breach" (id. at 506) and when the claim possesses "some guarantee of genuineness" Ferrara v Galluchio, 5 NY2d 16, 21, 152 NE2d 249, 176 NYS2d 996 (1958).

It is not disputed the Defendants owed Plaintiff a duty of care. Defendants in their failure to (1) address the harassment that Plaintiff endured by either protecting Plaintiff or disciplining the harassers, (2) failed to notify the police when it was ascertained that the pictures circulating the website were child pornography and that a crime may have taken place and (3) failed to notify Plaintiff's parents that she was a threat to herself and that pornographic photos were circulating of Plaintiff on the worldwide web, breached their duty of care to Plaintiff. That breach resulted in Plaintiff's emotional harm.

Defendants failure to inquire, investigate or follow up regarding the harassment that Plaintiff reported to them allowed Plaintiff's harassers to heighten and continue their action without threat of any repercussions. This was evidenced by the harassment becoming more aggressive and physical in nature-from name calling and teasing to yelling, pushing and cursing at Plaintiff. Defendants non-responsiveness to Plaintiff's complaints, made Plaintiff believe that if continued to complain that the harassment would grow worse. As a result, Plaintiff suffered emotional harm and was often seen crying and upset in the hallways and classrooms. Plaintiff was later diagnosed with depression and post-traumatic stress disorder.

Defendants' failure to notify the police of the pornographic photos of minor Plaintiff were on a public site on the internet is especially outrageous. Having been notified of the nature of the photographs, and in Defendant Sussman having seen the photographs herself, there is not doubt that pictures of Plaintiff's genitalia as a minor and engaged in sexual activity is child pornography. Failure to report this a crime or even as potential crime was not only negligent but deliberately indifferent to the well-being of Plaintiff Tyrrell. As a result, Plaintiff's attackers went unpunished  and no one answered for the sexual assault that Meghan endured.

Most egregious, was Defendants' use of their student confidentiality policy to prevent Plaintiff's parents from providing the guidance, comfort and protection that Defendants failed to extend during the two week period that Defendants refused to inform the Tyrrells about the incident with Meghan and her threatening to harm herself. Although citing, that student confidentiality policy did permit disclosure in cases were a crime is thought to have occurred or when a student is a possible threat to themselves, Defendants still waited two weeks to apprise Plaintiff's parents of anything. Defendants inaction caused Plaintiff to walk around in a hostile learning environment,  upset, crying, embarrassed and in disbelief. Plaintiff felt violated, embarrassed and betrayed and taken advantage of. (Defendants' Exhibit F, M. Tyrrell Tr. 127:22-128:4, 129:22-25, 156:21-157:4, 158:3-9)

23

D.      ***Notice of Claim Requirement***

Defendants repeat their notice of claim argument from their Motion to Dismiss, arguing that Plaintiff failed to properly notify Defendants under the Municipal Law 50-e and that her state claims should therefore be dismissed. Defendants claims fail now, as they did in their motion to dismiss. As a general rule, "in a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789 (2d Cir.1999).  Under New York law, a notice of claim is a "condition precedent" to bringing a tort claim against a municipality or any of its officers, agents, or employees. See N.Y. Gen. Mun. §§ 50-i(1)(a); 50-e(1)(a). The purpose of the notice of claim requirement is to afford the municipality "an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available." Teresta v. City of New York, 304 N.Y. 440, 443 (1952).

While deficiencies in notice of claims may generally be fatal to Plaintiff's state law claims, New York's notice of claim statute also permits the court to disregard such defects if they were made in good faith and did not prejudice the municipality. *See* N.Y. Gen. Mun. § 50-e(6).  At the outset, it must be noted that the Notice of Claim filed by Plaintiff's parents at the time of the incident was timely.  The Defendants' only point of contention is that the Notice of Claim was defective as it omitted some information regarding the incident.  However, although certain facts were inadvertently omitted from the *pro se* Notice of Claim, Defendant SEAFORD failed to set forth any facts tending to establish that it was prejudiced by the alleged defect. Defendants' merely assert a blanket, unsupported allegation that "it could not conduct a prompt investigation of the claims and is now prejudiced from doing given the time that has run since the alleged incident." See Def. Memo of Law p. 23.  Defendants readily admit that they had an opportunity to do an investigation headed by Mark Derison. Id. In the course of the deposition of Mark Derison, it was discovered that Defendants hired a private investigator to further investigate the matter. (Defendants' Exh. L. Derison, 93:15 - 95:15)

24

Furthermore, Defendants had the right to conduct a 50-h hearing, upon receiving Plaintiff's notice of claim to gain more specific information should they have chosen to do so. However, Defendants waived that right.

In addition to there being no prejudice to the municipality, Defendant Seaford made no showing that the Notice of Claim was filed in bad faith. Plaintiff was a minor at the time of the incident. As such, Plaintiff's parents filed the Notice of Claim on her behalf without the benefit of legal counsel. Many courts have disregarded notice of claims that do not comply with the General Municipal Law so long as the defective notice of claim was not filed in bad faith and the defendant suffered no prejudice. *See* <u>Mayer v. City of New York</u>, 80 A.D.2d 799, 437 N.Y.S.2d 94 (1st Dept. 1981) (lack of specificity in notice of claim was inadvertent and was not in any way calculated to confuse or prevaricate and no actual prejudice shown); <u>see also Dillard v. City of New York</u>, 67 A.D.2d 878 (a "mistake, omission, irregularity or defect" in the notice of claim may be corrected in the court's discretion provided the other party is not prejudiced).

The spirit and purpose of the notice of claim requirement would not be hindered if this Court were to exercise its discretion in disregarding the defect in Plaintiff's notice of claim. At the outset, the purpose of the notice of claim is to provide the municipality actual knowledge of the incident. In the instant matter, the District had more than sufficient notice of the incident. As the facts in Plaintiff's Counter-Statement of Facts establishes that the superintendent, assistant principal, principal and other employees were well aware of the incident immediately thereafter. Additionally, upon Mrs. Tyrrell's request for home instruction for her daughter, Defendants are assumed to have investigated the underlying incident prior to granting the Plaintiff home instruction.

Consequently, the Court should exercise its discretion pursuant to N.Y. Gen. Mun. §50-e(6) to disregard the defect. *See* <u>Malcom v. City of New York</u>, 770 N.Y.S.2d 79, 80 (2d Dep't 2003) (disregarding defect in notice of claim, which failed to allege location of arrest, because no actual

25

prejudice was demonstrated nor was there a showing of bad faith). Plaintiff's state law claims against

the District are, therefore, properly before the Court.

## **CONCLUSION**

For all the foregoing reasons, Defendants' Motion for Summary Judgment dismissing Plaintiff's

Amended Complaint should be denied.

Dated: Hempstead, New York
      September 27, 2010

                                Respectfully submitted,
                                LAW OFFICES OF
                                FREDERICK K. BREWINGTON

By:                                 
                                FREDERICK K. BREWINGTON and
                                MARJORIE MESIDOR
                                556 Peninsula Boulevard
                                Hempstead, New York 11550
                                (516) 489-6959

26